# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

KX TECHNOLOGIES, LLC
                Plaintiff

v.

ZUMA WATER FILTERS, INC.
     d/b/a ZUMA FILTERS,

U.S. WATER FILTERS, INC.
WATER FILTERS DIRECT, LLC
     d/b/a TIER1,

CLEARWATER FILTERS
     d/b/a MIST BY CLEARWATER,

WATERFALL FILTER COMPANY
     d/b/a WATERFALL FILTER,

BLUESKY
     d/b/a ICEPURE,

BEST FILTERS
     d/b/a BEST,

DISTA FILTER
     d/b/a DISTA,

SHOPSTIC, INC.
     d/b/a ALPINE WATER,

     and

ETERNAWATER
     d/b/a Eternawater
                Defendants

**Complaint for Damages and Injunctive Relief for Patent Infringement, False Advertising, Unfair Competition, and Unfair Trade Practices**

# COMPLAINT

Plaintiff KX Technologies, LLC ("KXT") alleges as follows:

## I.   NATURE OF THE ACTION

1.   This is a civil action seeking damages and injunctive relief for patent infringement under the patent laws of the United States, Title 35 of the United States Code §§ 1, *et seq.*, false advertising and unfair competition under the Lanham Act, section 43 (15 U.S.C. § 1125), and unfair trade practices under the Connecticut Unfair Trade Practices Act (CUTPA), C.G.S. §§ 42-110a, *et seq.*

## II. JURISDICTION AND VENUE

2.   Jurisdiction of this Court is proper pursuant to Title 28 U.S.C. §§ 1331 and 1338(a).

3.   This cause of action arises in part under the Lanham Act, section 43 (15 U.S.C. § 1125). Subject matter jurisdiction for the Lanham Act claim is conferred on this Court by the Lanham Act, section 39 (15 U.S.C. § 1121).

4.   This cause of action also arises in part under the Connecticut Unfair Trade Practices Act (CUTPA), C.G.S. §§ 42-110a, *et seq.* Subject matter jurisdiction for the CUTPA claim is conferred on this Court by 28 U.S.C. § 1338(b).

5.   Supplemental jurisdiction for the CUTPA claim is conferred on this Court by 28 U.S.C. § 1367(a).

6.   Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b).

### III. PARTIES

7. Plaintiff KX Technologies, LLC ("KXT") is a Delaware limited liability company authorized to do business in the State of Connecticut, having a principal place of business at 55 Railroad Avenue, West Haven, Connecticut 06516.

8. Plaintiff KXT is informed and believes that defendant Zuma Water Filters, Inc. d/b/a Zuma Filters is a corporation organized and existing under the laws of the state of California. It is assigned Entity Number C3397335 by the California Secretary of State, and has a principal place of business at 556 South Fair Oaks Ave, Suite 504, Pasadena, CA 91105. Exhibit A.

9. Plaintiff KXT is informed and believes that defendant Zuma Water Filters, Inc. d/b/a Zuma Filters transacts business in this district and has repeatedly solicited business in this district through an interactive website, including but not limited to zumafilters.com, houseoffilters.com, and Amazon.com, and has sold infringing water filter cartridges in this district. Exhibit A.

10. Plaintiff KXT is informed and believes that defendant Water Filters Direct LLC d/b/a Tier1 is a domestic limited liability company organized and existing under the laws of the state of Minnesota. Water Filters Direct LLC is assigned Entity Number 33592-LLC by the Minnesota Secretary of State, and has a principal place of business at 560 22nd Street, Zumbrota, MN 55992. Exhibit B.

11. Plaintiff KXT is informed and believes that defendant Water Filters Direct LLC d/b/a Tier1 transacts business in this district and has repeatedly solicited business in this district through an interactive website, including but not limited to fridgefilters.com, and waterfilters.net, and has sold infringing water filter cartridges in this district. Exhibit B.

12. Plaintiff KXT is informed and believes that defendant U.S. Water Filters Inc. d/b/a Tier1 is a corporation organized and existing under the laws of the state of Delaware. U.S. Water Filters Inc., has a principal place of business at 560 22nd Street, Zumbrota, MN 55992. Exhibit C.

13. Plaintiff KXT is informed and believes that defendant U.S. Water Filters, Inc., is the sole owner of the United States Trademark Registration No. 4,709,090 for selling product in interstate commerce under the mark "TIER1", including water filtration and purification units and replacement cartridges and filters thereof. Exhibit C.

14. Plaintiff KXT is informed and believes that defendant U.S. Water Filters, Inc., transacts business in this district and has repeatedly solicited business in this district through an interactive website, and has sold infringing water filter cartridges in this district. Exhibit C.

15. Plaintiff KXT is informed and believes that defendant Clearwater Filters d/b/a Mist by Clearwater is a domestic corporation with an as yet unknown business address selling products in interstate commerce, including water filtration and purification units and replacement cartridges and filters thereof, including the infringing device as alleged herein.

16. Plaintiff KXT is informed and believes that defendant Clearwater Filters d/b/a Mist by Clearwater transacts business in this district and has repeatedly solicited business in this district through various interactive websites, including Amazon.com. Exhibit D.

17. Defendant Clearwater Filters d/b/a Mist by Clearwater remains evasive in providing any business address to the public. Plaintiff KXT anticipates the filing of a third party subpoena upon Amazon.com at the onset of this litigation to determine the business address of the defendant.

18. Plaintiff KXT is informed and believes that defendant Waterfall Filter Company d/b/a Waterfall Filter is a domestic limited liability company organized and existing under the laws of the state of Nevada.  Waterfall Filter Company is assigned entity number E0354842014-7 by the Nevada Secretary of State, and has a principal place of business at 100-126 8020 S. Rainbow Blvd, Las Vegas, Nevada 89139.  Exhibit E.

19. Plaintiff KXT is informed and believes that defendant Waterfall Filter Company d/b/a Waterfall Filter is the sole owner of the United States Trademark Registration No. 4763656 for selling product in interstate commerce under the mark "Waterfall Filter", including water filtration and purification units and replacement cartridges and filters thereof. Exhibit E.

20. Plaintiff KXT is informed and believes that defendant Waterfall Filter Company d/b/a Waterfall Filter transacts business in this district and has repeatedly solicited business in this district through various interactive websites, including Amazon.com. Exhibit E.

21. Plaintiff KXT is informed and believes that defendant Bluesky d/b/a IcePure is a domestic corporation with an as yet unknown business address selling products in interstate commerce, including water filtration and purification units and replacement cartridges and filters thereof, including the infringing device as alleged herein. Exhibit F.

22. Plaintiff KXT is informed and believes that defendant Bluesky d/b/a IcePure transacts business in this district and has repeatedly solicited business in this district through various interactive websites, including Amazon.com. Exhibit F.

23. Defendant Bluesky d/b/a IcePure remains evasive in providing any business address to the public. Plaintiff KXT anticipates the filing of a third party subpoena upon Amazon.com at the onset of this litigation to determine the business address of the defendant.

24. Plaintiff KXT is informed and believes that defendant Best Filters d/b/a Best is a domestic corporation with an as yet unknown business address selling products in interstate commerce, including water filtration and purification units and replacement cartridges and filters thereof, including the infringing device as alleged herein. Exhibit G.

25. Plaintiff KXT is informed and believes that defendant Best Filters d/b/a Best transacts business in this district and has repeatedly solicited business in this district through various interactive websites, including Amazon.com. Exhibit G.

26. Defendant Best Filters d/b/a Best remains evasive in providing any business address to the public. Plaintiff KXT anticipates the filing of a third party subpoena upon Amazon.com at the onset of this ligation to determine the business address of the defendant.

27. Plaintiff KXT is informed and believes that defendant Shopstic, Inc. d/b/a Alpine Water, is a domestic corporation existing under the laws of Florida, having a business at 6586 Waters Edge Way, Lakewood Ranch, Florida 34202. Exhibit H.

28. Plaintiff KXT is informed and believes that defendant Shopstic, Inc. d/b/a Alpine Water is the sole owner of the United States Trademark Application No. 87077359 for selling product in interstate commerce under the mark "Alpine Water", including refrigerator water filters and replacement cartridges thereof, including the infringing device as alleged herein. Exhibit H.

29. Plaintiff KXT is informed and believes that defendant Shopstic, Inc. d/b/a Alpine Water transacts business in this district and has repeatedly solicited business in this district through various interactive websites, including Amazon.com. Exhibit H.

30. Plaintiff KXT is informed and believes that defendant Dista Filter d/b/a Dista is a domestic corporation with an as yet unknown business address selling products in interstate commerce, including water filtration and purification units and replacement cartridges and filters thereof, including the infringing device as alleged herein. Exhibit I.

31. Plaintiff KXT is informed and believes that defendant Dista Filter d/b/a Dista transacts business in this district and has repeatedly solicited business in this district through various interactive websites, including Amazon.com. Exhibit I.

32. Defendant Dista Filter d/b/a Dista remains evasive in providing any business address to the public. Plaintiff KXT anticipates the filing of a third party subpoena upon Amazon.com at the onset of this litigation to determine the business address of the defendant.

33. Plaintiff KXT is informed and believes that defendant Eternawater d/b/a Eternawater is a domestic corporation with an as yet unknown business address selling products in interstate commerce, including water filtration and purification units and replacement cartridges and filters thereof, including the infringing device as alleged herein. Exhibit J.

34. Plaintiff KXT is informed and believes that defendant Eternawater d/b/a Eternawater transacts business in this district and has repeatedly solicited business in this district through various interactive websites, including Amazon.com. Exhibit J.

35. Defendant Eternawater d/b/a Eternawater remains evasive in providing any business address to the public. Plaintiff KXT anticipates the filing of a third party subpoena upon Amazon.com at the onset of this litigation to determine the business address of the defendant.

## IV. FACTUAL BACKGROUND

36. Plaintiff KXT is the assignee and rightful owner of the following United States Patent, which was duly and legally issued by the United States Patent and Trademark Office: U.S. Patent No. 8,673,146, issued on March 18, 2014, titled "PUSH FILTER WITH FLOATING KEY LOCK," (the "'146 Patent"). Exhibit K.

37. Relevant independent claims of the '146 Patent include Claims 1 and 15. Claim 1 of the '146 Patent is directed to a filter housing assembly:

> 1. A filter housing assembly comprising:
>    a filter housing for enclosing a filter media, said filter housing having a body and a top portion for forming a fluid-tight seal with said body, said filter housing top portion including:
>    an ingress port;
>    an egress port;
>    a filter key located on said top portion and having a top surface, longitudinal sides, and lateral sides, each of said filter key longitudinal sides including a plurality of spaced protrusions or fingers extending laterally from said top surface, wherein said fingers include winged extensions having slanted or angled faces for mating attachment to a filter base or manifold.

'146 Patent, Claim 1, Exhibit K.

38. Claim 15 of the '146 Patent is directed to a method for extracting a filter housing assembly from a filter base:

> 15. A method for extracting a filter housing assembly from a filter base comprising:
>    applying an axial insertion force to said filter housing assembly already connected to said filter base towards said filter base thereby inserting a filter key on said filter housing assembly further into a slidable floating

> lock of said filter base, said filter key having longitudinal sides with a plurality of fingers or spaced protrusions on each of said longitudinal sides;
> releasing said slidable floating lock, such that said floating lock moves relative to said filter key under a resilient retraction force;
> aligning said plurality of fingers on each longitudinal side of said filter key between fingers or drive keys on said floating lock; and
> applying an axial extraction force to said filter housing assembly to remove said filter housing assembly from said filter base.

'146 Patent, Claim 15, Exhibit K.

39. Plaintiff KXT is the assignee and rightful owner of the following United States Patents, which were duly and legally issued by the United States Patent and Trademark Office: a) U.S. Patent No. D656,578, issued on March 27, 2012, titled "CASSETTE FILTER," (the "'578 Patent"; Exhibit L); b) U.S. Patent No. D656,579, issued on March 27, 2012, titled "CASSETTE FILTER AND COVER PLATE" (the "579 Patent"; Exhibit M); c) U.S. Patent No. D656,580, issued on March 27, 2012, titled "CASSETTE FILTER MANIFOLD" (the "580 Patent"; Exhibit N) (the design patents collectively referred to herein as the "CASSETTE FILTER Design Patents"); and d) U.S. Patent No. 9,061,225 issued on June 23, 2015, titled "REINFORCED RECEIVER FOR CASSETTE FILTER LOCKING CLIP" (the "225 Patent"; Exhibit O); (the design patents and the Reinforced Receiver utility patent are collectively referred to herein as the "CASSETTE FILTER Technology Patents").

40. Relevant independent claims of the '225 Patent include Claims 1 and 11. Claim 1 of the '225 Patent is directed to a receiver for a cassette filter:

> 1. A receiver for a cassette filter housing having an upper housing surface the receiver comprising:
> an arrow shaped elongated member parallel with an upper surface of the cassette, the elongated member having ends and including a base portion attached to the upper housing surface the cross-section of which is a

substantially planer segment extending to the upper surface, and an upper receiver portion having at least one cavaliered retaining surface; and

a first reinforcement member extending outward from the base portion adjacent one of the ends of the elongated member and perpendicular to the elongated member, and a second reinforcement member extending outward from the base portion adjacent the opposite end of the elongated member and perpendicular to the elongated member the reinforcement members affixed to the base portion and the upper housing surface;

whereby the elongated member is engagable with a locking clip having at least one foot engagable with the at least one retaining surface when the receiver and locking clip are in the locked position and the reinforcement member provides support for the receiver.

'225 Patent, Claim 1; Exhibit O.

41. Claim 11 of the '225 Patent is directed to a cassette filter housing:

11. A receiver for a cassette filter housing having an upper housing surface the receiver comprising:

a fixed, immobile elongated member parallel with an upper surface of the cassette, the elongated member including a base portion attached to the upper housing surface and an upper receiver portion having at least one retaining surface, said base portion being substantially centered on the elongated member and retains the elongated member in a fixed position; and

at least one triangular reinforced end member integrally formed with the elongated member and the upper housing surface;

whereby the elongated member is engagable with a slidably engaging manifold locking clip having at least one foot engagable with the at least one retaining surface when the receiver and locking clip are in the locked position and the at least one triangular reinforced end member provides support for the receiver.

'225 Patent, Claim 11; Exhibit O.

## V. CLAIMS FOR RELIEF

### FIRST COUNT
### Patent Infringement of U.S. Patent No. 8,673,146
### (as to Zuma Water Filters, Inc. d/b/a Zuma Filters)

42. Plaintiff realleges and incorporates herein the allegations of paragraphs 1-41 inclusive.

43. Plaintiff KXT is informed and believes that defendant Zuma Water Filters, Inc. d/b/a Zuma Filters ("Zuma") has infringed Claims 1, 2, 3, 6, and 7 of the '146 Patent under 35 U.S.C. § 271(a) by making, using, offering for sale and/or selling in this district and elsewhere in the United States a filter housing assembly identified by the invention disclosed and claimed in the '146 Patent. Such infringing device includes the replacement filter by Zuma Filters for the Frigidaire PureSource ULTRAWF filter cartridge, Model No. OPFE1-RF300 ("Defendants' ULTRAWF Replacement Cartridge"). Exhibit A.

44. Photographs of defendant Zuma's ULTRAWF Replacement Cartridge and its packaging, and photographs depicting the salient features of the filter key, are attached in Exhibit A.

45. Defendant Zuma's' ULTRAWF Replacement Cartridge embodies all of the limitations and features of Claims 1, 2, 3, 6, and 7 of the '146 Patent as shown in the annotated photos of Exhibit A, including:

   a) a filter housing 10 having an ingress port 12 and an egress port 14;

   b) a filter key 16 located on the top portion of the filter housing, having longitudinal sides 18 and lateral sides 20 including a plurality of spaced protrusions or fingers 22 extending from the top surface of the filter key, where the fingers include winged extensions having slanted or angled faces 24;

   c) the filter key being attached to the filter housing top portion by a snap fit, friction fit, welding, or bonding;

   d) the ingress port and said egress port being off axial center of the filter housing; and

   e) the spaced protrusions or fingers being integrally formed with the filter key.

46. Plaintiff KXT is informed and believes that defendant Zuma has infringed Claim 15 of the '146 Patent under 35 U.S.C. § 271(b) by actively inducing infringement of the method for extracting a filter housing assembly from a filter base identified by the method disclosed and claimed.

47. Plaintiff KXT is informed and believes that offers for sale and sales of said infringing device have been widely and repeatedly made in the United States by and on behalf of defendant Zuma through interactive websites on the Internet and through other means.

48. Plaintiff KXT is informed and believes that the direct infringement and inducement of infringement of the '146 Patent by defendant Zuma by making, using, offering for sale and selling said infringing device has been repeated with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

49. As a direct and proximate result of defendant Zuma's acts of patent infringement and inducement of infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

50. Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant Zuma is preliminarily and permanently enjoined from their unlawful and willful infringement of the '146 Patent, Plaintiff KXT will suffer irreparable harm.

### SECOND COUNT
### Patent Infringement of U.S. Patent No. 8,673,146
### (as to U.S. Water Filters, Inc. d/b/a Tier1 and Water Filters Direct LLC d/b/a Tier1)

51. Plaintiff realleges and incorporates herein the allegations of paragraphs 1-41 inclusive.

52. Plaintiff KXT is informed and believes that defendants U.S. Water Filters, Inc. d/b/a Tier1 and Water Filters Direct LLC d/b/a Tier1 (collectively, "Tier1") have infringed Claims 1, 2, 3, 6, and 7 of the '146 Patent under 35 U.S.C. § 271(a) by making, using, offering for sale and/or selling in this district and elsewhere in the United States a filter housing assembly identified by the invention disclosed and claimed in the '146 Patent. Such infringing device includes the replacement filter by U.S. Water Filters, Inc. d/b/a Tier1 and Water Filters Direct LLC d/b/a Tier1 for the Frigidaire PureSource ULTRAWF filter cartridge, Model No. RWF1180 ("Defendants' ULTRAWF Replacement Cartridge"). Exhibits B & C.

53. On January 19, 2016, Defendants Water Filters Direct LLC and U.S. Water Filters, Inc., both doing business under the umbrella entity and/or brand name of "Tier1" were notified by United States Certified Mail (No. 7009 2250 0002 0062 6786) that they were offering for sale and/or selling water filters that infringed the " '146 Patent", and were requested by Plaintiff KXT to cease and desist the infringing activities. Exhibit B.

54. Photographs of Defendants' Tier1 ULTRAWF Replacement Cartridge and its packaging, and photographs depicting the salient features of the filter key, are attached in Exhibit B.

55. Defendants' Tier1 ULTRAWF Replacement Cartridge embodies all of the limitations and features of Claims 1, 2, 3, 6, and 7 of the '146 Patent as shown in the annotated photos of Exhibit B, including:

    a) a filter housing 10 having an ingress port 12 and an egress port 14;

    b) a filter key 16 located on the top portion of the filter housing, having longitudinal sides 18 and lateral sides 20 including a plurality of spaced

protrusions or fingers 22 extending from the top surface of the filter key, where the fingers include winged extensions having slanted or angled faces 24;

c)   the filter key being attached to the filter housing top portion by a snap fit, friction fit, welding, or bonding;

d)   the ingress port and said egress port being off axial center of the filter housing; and

e)   the spaced protrusions or fingers being integrally formed with the filter key.

56. Plaintiff KXT is informed and believes that Defendants Tier1 have infringed Claim 15 of the '146 Patent under 35 U.S.C. § 271(b) by actively inducing infringement of the method for extracting a filter housing assembly from a filter base identified by the method disclosed and claimed.

57. Plaintiff KXT is informed and believes that offers for sale and sales of said infringing device have been widely and repeatedly made in the United States by and on behalf of Defendants Tier1 through interactive websites on the Internet and through other means. Exhibits B & C.

58. Plaintiff KXT is informed and believes that Defendants knew of the '146 Patent, and knew that their activities would lead to direct infringement of the filter housing assembly claims, and inducing infringement of the method claim for extracting a filter housing assembly, identified by the '146 Patent.

59. Plaintiff KXT is informed and believes that the direct infringement and inducement of infringement of the '146 Patent by Defendants Tier1 by making, using, offering for sale and selling said infringing device, and by continuing to do so has been repeated and willful with

conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

60. As a direct and proximate result of Defendants Tier1 acts of patent infringement and inducement of infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

61. Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendants Tier1 are preliminarily and permanently enjoined from their unlawful and willful infringement of the '146 Patent, Plaintiff KXT will suffer irreparable harm.

### THIRD COUNT
### Patent Infringement of U.S. Patent No. 8,673,146
### (as to Clearwater Filters d/b/a Mist by Clearwater)

62. Plaintiff realleges and incorporates herein the allegations of paragraphs 1-41 inclusive.

63. Plaintiff KXT is informed and believes that defendant Clearwater Filters d/b/a Mist by Clearwater ("Mist") have infringed Claims 1, 2, 3, 6, and 7 of the '146 Patent under 35 U.S.C. § 271(a) by making, using, offering for sale and/or selling in this district and elsewhere in the United States a filter housing assembly identified by the invention disclosed and claimed in the '146 Patent. Such infringing device includes the replacement filter by Clearwater Filters d/b/a Mist by Clearwater for the Frigidaire PureSource ULTRAWF filter cartridge, Model No. CWMF011 ("Defendants' ULTRAWF Replacement Cartridge"). Exhibit D.

64. Photographs of Defendant Mist's ULTRAWF Replacement Cartridge and its packaging, and photographs depicting the salient features of the filter key, are depicted in Exhibit D.

65. Defendant Mist's ULTRAWF Replacement Cartridge embodies all of the limitations and features of Claims 1, 2, 3, 6, and 7 of the '146 Patent as shown in the annotated photos of Exhibit D, including:

    a)  a filter housing 10 having an ingress port 12 and an egress port 14;

    b)  a filter key 16 located on the top portion of the filter housing, having longitudinal sides 18 and lateral sides 20 including a plurality of spaced protrusions or fingers 22 extending from the top surface of the filter key, where the fingers include winged extensions having slanted or angled faces 24;

    c)  the filter key being attached to the filter housing top portion by a snap fit, friction fit, welding, or bonding;

    d)  the ingress port and said egress port being off axial center of the filter housing; and

    e)  the spaced protrusions or fingers being integrally formed with the filter key.

66. Plaintiff KXT is informed and believes that defendant Mist has infringed Claim 15 of the '146 Patent under 35 U.S.C. § 271(b) by actively inducing infringement of the method for extracting a filter housing assembly from a filter base identified by the method disclosed and claimed.

67. Plaintiff KXT is informed and believes that offers for sale and sales of said infringing device have been widely and repeatedly made in the United States by and on behalf of defendant Mist through interactive websites on the Internet and through other means.

68. Plaintiff KXT is informed and believes that the direct infringement and inducement of infringement of the '146 Patent by defendant Mist by making, using, offering for sale and selling

said infringing device has been repeated with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

69. As a direct and proximate result of defendant Mist's acts of patent infringement and inducement of infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

70. Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant Mist is preliminarily and permanently enjoined from their unlawful infringement of the '146 Patent, Plaintiff KXT will suffer irreparable harm.

*FOURTH COUNT*
*Patent Infringement of U.S. Patent No. 8,673,146*
*(as to Waterfall Filter Company d/b/a Waterfall Filter)*

71. Plaintiff realleges and incorporates herein the allegations of paragraphs 1-41 inclusive.

72. Plaintiff KXT is informed and believes that defendant Waterfall Filter Company d/b/a Waterfall Filter ("Waterfall") has infringed Claims 1, 2, 3, 6, and 7 of the '146 Patent under 35 U.S.C. § 271(a) by making, using, offering for sale and/or selling in this district and elsewhere in the United States a filter housing assembly identified by the invention disclosed and claimed in the '146 Patent. Such infringing device includes the replacement filter by Waterfall Filter Company d/b/a Waterfall Filter for the Frigidaire PureSource ULTRAWF filter cartridge, Model No. WFC4401 ("Defendants' ULTRAWF Replacement Cartridge"). Exhibit E.

73. Photographs of Defendant Waterfall's ULTRAWF Replacement Cartridge and its packaging, and photographs depicting the salient features of the filter key, are depicted in Exhibit E.

74. Defendant Waterfall's ULTRAWF Replacement Cartridge embodies all of the limitations and features of Claims 1, 2, 3, 6, and 7 of the '146 Patent as shown in the annotated photos of Exhibit E, including:

    a)  a filter housing 10 having an ingress port 12 and an egress port 14;

    b)  a filter key 16 located on the top portion of the filter housing, having longitudinal sides 18 and lateral sides 20 including a plurality of spaced protrusions or fingers 22 extending from the top surface of the filter key, where the fingers include winged extensions having slanted or angled faces 24;

    c)  the filter key being attached to the filter housing top portion by a snap fit, friction fit, welding, or bonding;

    d)  the ingress port and said egress port being off axial center of the filter housing; and

    e)  the spaced protrusions or fingers being integrally formed with the filter key.

75. Plaintiff KXT is informed and believes that defendant Waterfall has infringed Claim 15 of the '146 Patent under 35 U.S.C. § 271(b) by actively inducing infringement of the method for extracting a filter housing assembly from a filter base identified by the method disclosed and claimed.

76. Plaintiff KXT is informed and believes that offers for sale and sales of said infringing device have been widely and repeatedly made in the United States by and on behalf of Defendant Waterfall through interactive websites on the Internet and through other means.

77. Plaintiff KXT is informed and believes that the direct infringement and inducement of infringement of the '146 Patent by Defendant Waterfall by making, using, offering for sale and

selling said infringing device has been repeated with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

78. As a direct and proximate result of defendant Waterfall's acts of patent infringement and inducement of infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

79. Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant Waterfall is preliminarily and permanently enjoined from their unlawful and willful infringement of the '146 Patent, Plaintiff KXT will suffer irreparable harm.

### FIFTH COUNT
### Patent Infringement of U.S. Patent No. 8,673,146
### (as to Bluesky d/b/a IcePure)

80. Plaintiff realleges and incorporates herein the allegations of paragraphs 1-41 inclusive.

81. Plaintiff KXT is informed and believes that defendant Bluesky d/b/a IcePure ("IcePure") has infringed Claims 1, 2, 3, 6, and 7 of the '146 Patent under 35 U.S.C. § 271(a) by making, using, offering for sale and/or selling in this district and elsewhere in the United States a filter housing assembly identified by the invention disclosed and claimed in the '146 Patent. Such infringing device includes the replacement filter by Bluesky d/b/a IcePure for the Frigidaire PureSource ULTRAWF filter cartridge, Model No. RFC2200A ("Defendants' ULTRAWF Replacement Cartridge"). Exhibit F.

82. Photographs of defendant IcePure's ULTRAWF Replacement Cartridge and its packaging, and photographs depicting the salient features of the filter key, are depicted in Exhibit F.

83. Defendant IcePure's ULTRAWF Replacement Cartridge embodies all of the limitations and features of Claims 1, 2, 3, 6, and 7 of the '146 Patent as shown in the annotated photos of Exhibit F, including:

    a)  a filter housing 10 having an ingress port 12 and an egress port 14;

    b)  a filter key 16 located on the top portion of the filter housing, having longitudinal sides 18 and lateral sides 20 including a plurality of spaced protrusions or fingers 22 extending from the top surface of the filter key, where the fingers include winged extensions having slanted or angled faces 24;

    c)  the filter key being attached to the filter housing top portion by a snap fit, friction fit, welding, or bonding;

    d)  the ingress port and said egress port being off axial center of the filter housing; and

    e)  the spaced protrusions or fingers being integrally formed with the filter key.

84. Plaintiff KXT is informed and believes that Defendant IcePure has infringed Claim 15 of the '146 Patent under 35 U.S.C. § 271(b) by actively inducing infringement of the method for extracting a filter housing assembly from a filter base identified by the method disclosed and claimed.

85. Plaintiff KXT is informed and believes that offers for sale and sales of said infringing device have been widely and repeatedly made in the United States by and on behalf of Defendant IcePure through interactive websites on the Internet and through other means.

86. Plaintiff KXT is informed and believes that the direct infringement and inducement of infringement of the '146 Patent by Defendant IcePure by making, using, offering for sale and

selling said infringing device has been repeated with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

87. As a direct and proximate result of Defendant IcePure's acts of patent infringement and inducement of infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

88. Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant IcePure is preliminarily and permanently enjoined from their unlawful and willful infringement of the '146 Patent, Plaintiff KXT will suffer irreparable harm.

### SIXTH COUNT
### Patent Infringement of U.S. Patent No. 8,673,146
### (as to Best Filters d/b/a Best)

89. Plaintiff realleges and incorporates herein the allegations of paragraphs 1-41 inclusive.

90. Plaintiff KXT is informed and believes that Defendant Best Filters d/b/a Best ("Best") have infringed Claims 1, 2, 3, 6, and 7 of the '146 Patent under 35 U.S.C. § 271(a) by making, using, offering for sale and/or selling in this district and elsewhere in the United States a filter housing assembly identified by the invention disclosed and claimed in the '146 Patent. Such infringing device includes the replacement filter by Best for the Frigidaire PureSource ULTRAWF filter cartridge, Model No. ULTRA WF ("Defendant Best's ULTRAWF Replacement Cartridge"). Exhibit G.

91. Photographs of Defendant Best's ULTRAWF Replacement Cartridge and its packaging, and photographs depicting the salient features of the filter key, are attached in Exhibit G.

92. Defendant Best's ULTRAWF Replacement Cartridge embodies all of the limitations and features of Claims 1, 2, 3, 6, and 7 of the '146 Patent as shown in the annotated photos of Exhibit G, including:

    a) a filter housing 10 having an ingress port 12 and an egress port 14;

    b) a filter key 16 located on the top portion of the filter housing, having longitudinal sides 18 and lateral sides 20 including a plurality of spaced protrusions or fingers 22 extending from the top surface of the filter key, where the fingers include winged extensions having slanted or angled faces 24;

    c) the filter key being attached to the filter housing top portion by a snap fit, friction fit, welding, or bonding;

    d) the ingress port and said egress port being off axial center of the filter housing; and

    e) the spaced protrusions or fingers being integrally formed with the filter key.

93. Plaintiff KXT is informed and believes that Defendant Best has infringed Claim 15 of the '146 Patent under 35 U.S.C. § 271(b) by actively inducing infringement of the method for extracting a filter housing assembly from a filter base identified by the method disclosed and claimed.

94. Plaintiff KXT is informed and believes that offers for sale and sales of said infringing device have been widely and repeatedly made in the United States by and on behalf of Defendant Best through interactive websites on the Internet and through other means.

95. Plaintiff KXT is informed and believes that the direct infringement and inducement of infringement of the '146 Patent by Defendant Best by making, using, offering for sale and selling

said infringing device has been repeated with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

96. As a direct and proximate result of Defendant Best's acts of patent infringement and inducement of infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

97. Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant Best is preliminarily and permanently enjoined from their unlawful and willful infringement of the '146 Patent, Plaintiff KXT will suffer irreparable harm.

### SEVENTH COUNT
### Patent Infringement of U.S. Patent No. 8,673,146
### (as to Shopstic, Inc. d/b/a Alpine Water)

98. Plaintiff realleges and incorporates herein the allegations of paragraphs 1-41 inclusive.

99. Plaintiff KXT is informed and believes that Defendant Shopstic, Inc. d/b/a Alpine Water ("Alpine") have infringed Claims 1, 2, 3, 6, and 7 of the '146 Patent under 35 U.S.C. § 271(a) by making, using, offering for sale and/or selling in this district and elsewhere in the United States a filter housing assembly identified by the invention disclosed and claimed in the '146 Patent. Such infringing device includes the replacement filter by Shopstic, Inc. d/b/a Alpine Water for the Frigidaire PureSource ULTRAWF filter cartridge ("Defendant Alpine's ULTRAWF Replacement Cartridge"). Exhibit H.

100. Photographs of Defendant Alpine's ULTRAWF Replacement Cartridge and its packaging, and photographs depicting the salient features of the filter key, are depicted in Exhibit H.

101.  Defendant Alpine's ULTRAWF Replacement Cartridge embodies all of the limitations and features of Claims 1, 2, 3, 6, and 7 of the '146 Patent as shown in the annotated photos of Exhibit H, including:

> a)  a filter housing 10 having an ingress port 12 and an egress port 14;
>
> b)  a filter key 16 located on the top portion of the filter housing, having longitudinal sides 18 and lateral sides 20 including a plurality of spaced protrusions or fingers 22 extending from the top surface of the filter key, where the fingers include winged extensions having slanted or angled faces 24;
>
> c)  the filter key being attached to the filter housing top portion by a snap fit, friction fit, welding, or bonding;
>
> d)   the ingress port and said egress port being off axial center of the filter housing; and
>
> e)  the spaced protrusions or fingers being integrally formed with the filter key.

102.  Plaintiff KXT is informed and believes that Defendant has infringed Claim 15 of the '146 Patent under 35 U.S.C. § 271(b) by actively inducing infringement of the method for extracting a filter housing assembly from a filter base identified by the method disclosed and claimed.

103.  Plaintiff KXT is informed and believes that offers for sale and sales of said infringing device have been widely and repeatedly made in the United States by and on behalf of Defendant Alpine through interactive websites on the Internet and through other means.

104.  Plaintiff KXT is informed and believes that the direct infringement and inducement of infringement of the '146 Patent by Defendant Alpine by making, using, offering for sale and

selling said infringing device has been repeated with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

105.  As a direct and proximate result of Defendant Alpine's acts of patent infringement and inducement of infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

106.  Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant Alpine is preliminarily and permanently enjoined from their unlawful and willful infringement of the '146 Patent, Plaintiff KXT will suffer irreparable harm.

### EIGHTH COUNT
### Patent Infringement of U.S. Patent No. 8,673,146
### (as to Dista Filter d/b/a Dista)

107.  Plaintiff realleges and incorporates herein the allegations of paragraphs 1-41 inclusive.

108.  Plaintiff KXT is informed and believes that Defendant Dista Filter d/b/a Dista ("Dista") has infringed Claims 1, 2, 3, 6, and 7 of the '146 Patent under 35 U.S.C. § 271(a) by making, using, offering for sale and/or selling in this district and elsewhere in the United States a filter housing assembly identified by the invention disclosed and claimed in the '146 Patent. Such infringing device includes the replacement filter by Dista Filter d/b/a Dista for the Frigidaire PureSource ULTRAWF filter cartridge, Model No. DWF-22 ("Defendant Dista's ULTRAWF Replacement Cartridge"). Exhibit I.

109.  Photographs of Defendant Dista's ULTRAWF Replacement Cartridge and its packaging and photographs depicting the salient features of the filter key, are attached as Exhibit I.

110.  Defendant Dista's ULTRAWF Replacement Cartridge embodies all of the limitations and features of Claims 1, 2, 3, 6, and 7 of the '146 Patent as shown in the annotated photos of Exhibit I, including:

a)  a filter housing 10 having an ingress port 12 and an egress port 14;

b) a filter key 16 located on the top portion of the filter housing, having longitudinal sides 18 and lateral sides 20 including a plurality of spaced protrusions or fingers 22 extending from the top surface of the filter key, where the fingers include winged extensions having slanted or angled faces 24;

c)  the filter key being attached to the filter housing top portion by a snap fit, friction fit, welding, or bonding;

d)  the ingress port and said egress port being off axial center of the filter housing; and

e)  the spaced protrusions or fingers being integrally formed with the filter key.

111.  Plaintiff KXT is informed and believes that Defendant Dista has infringed Claim 15 of the '146 Patent under 35 U.S.C. § 271(b) by actively inducing infringement of the method for extracting a filter housing assembly from a filter base identified by the method disclosed and claimed.

112.  Plaintiff KXT is informed and believes that offers for sale and sales of said infringing device have been widely and repeatedly made in the United States by and on behalf of Defendant Dista through interactive websites on the Internet and through other means.

113.  Plaintiff KXT is informed and believes that the direct infringement and inducement of infringement of the '146 Patent by Defendant Dista by making, using, offering for sale and selling said infringing device has been repeated with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

114. As a direct and proximate result of Defendant Dista's acts of patent infringement and inducement of infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

115. Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant Dista is preliminarily and permanently enjoined from their unlawful and willful infringement of the '146 Patent, Plaintiff KXT will suffer irreparable harm.

### NINTH COUNT
### Patent Infringement of U.S. Patent No. 8,673,146
### (as to Eternawater d/b/a Eternawater)

116. Plaintiff realleges and incorporates herein the allegations of paragraphs 1-41 inclusive.

117. Plaintiff KXT is informed and believes that Defendant Eternawater d/b/a Eternawater ("Eternawater") has infringed Claims 1, 2, 3, 6, and 7 of the '146 Patent under 35 U.S.C. § 271(a) by making, using, offering for sale and/or selling in this district and elsewhere in the United States a filter housing assembly identified by the invention disclosed and claimed in the '146 Patent. Such infringing device includes the replacement filter by Eternawater for the Frigidaire PureSource ULTRAWF filter cartridge, Model No. EWRF1022 ("Defendants' ULTRAWF Replacement Cartridge"). Exhibit J.

118. Photographs of Defendant Eternawater's ULTRAWF Replacement Cartridge and its packaging, and photographs depicting the salient features of the filter key, are depicted in Exhibit J.

119. Defendant Eternawater's ULTRAWF Replacement Cartridge embodies all of the limitations and features of Claims 1, 2, 3, 6, and 7 of the '146 Patent as shown in the annotated photos of Exhibit J, including:

a)  a filter housing 10 having an ingress port 12 and an egress port 14;

b) a filter key 16 located on the top portion of the filter housing, having longitudinal sides 18 and lateral sides 20 including a plurality of spaced protrusions or fingers 22 extending from the top surface of the filter key, where the fingers include winged extensions having slanted or angled faces 24;

c)  the filter key being attached to the filter housing top portion by a snap fit, friction fit, welding, or bonding;

d)  the ingress port and said egress port being off axial center of the filter housing; and

e)  the spaced protrusions or fingers being integrally formed with the filter key.

120.  Plaintiff KXT is informed and believes that Defendant Eternawater has infringed Claim 15 of the '146 Patent under 35 U.S.C. § 271(b) by actively inducing infringement of the method for extracting a filter housing assembly from a filter base identified by the method disclosed and claimed.

121.  Plaintiff KXT is informed and believes that offers for sale and sales of said infringing device have been widely and repeatedly made in the United States by and on behalf of Defendant Eternawater through interactive websites on the Internet and through other means.

122.  Plaintiff KXT is informed and believes that the direct infringement and inducement of infringement of the '146 Patent by Defendant Eternawater by making, using, offering for sale and selling said infringing device, and by continuing to do so has been repeated and willful with

conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

123.  As a direct and proximate result of Defendant Eternawater's acts of patent infringement and inducement of infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

124.  Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant Eternawater is preliminarily and permanently enjoined from their unlawful and willful infringement of the '146 Patent, Plaintiff KXT will suffer irreparable harm.

***TENTH COUNT***
***Patent Infringement of the CASSETTE FILTER Technology Patents***
***(as to Waterfall Filter Company d/b/a Waterfall Filter)***

125.  Plaintiff realleges and incorporates herein the allegations of paragraphs 1-41 and 72-79 inclusive.

126.  Plaintiff KXT is informed and believes that Defendant Waterfall has infringed Claims 1-5 and 11-17 of the '225 Patent under 35 U.S.C. § 271(a) by making, using, offering for sale and/or selling in this district and elsewhere in the United States a filter housing assembly identified by the invention disclosed and claimed in the '225 Patent. Such infringing device includes the replacement filter by Waterfall for the Frigidaire PureSource WF2CB filter cartridge, Model No. WFC6601. Exhibit E.

127.  Photographs of Defendant Waterfall's replacement filter and its packaging are attached in Exhibit E.

128.  Defendant Waterfall's replacement filter embodies all of the limitations and features of Claims 1-5 and 11-15 of the '225 Patent as shown in the annotated photos of Exhibit E, including:

a)  an arrow shaped elongated member 100 parallel with an upper surface 105 of the cassette 110;

b)  the elongated member having ends 112, 114 and including a base portion 116 attached to the upper housing surface 105 the cross-section of which is a substantially planer segment extending to the upper surface;

c)  an upper receiver portion 120 having at least one retaining surface 122;

d)  a first reinforcement member 124 extending outward from the base portion adjacent one of the ends of the elongated member and perpendicular to the elongated member; and

e)  a second reinforcement member 126 extending outward from the base portion adjacent the opposite end of the elongated member and perpendicular to the elongated member the reinforcement members affixed to the base portion and the upper housing surface.

129.  Plaintiff KXT is informed and believes that Defendant Waterfall has infringed the CASSETTE FILTER Design Patents by making, using, offering for sale and/or selling in this district and elsewhere in the United States a cassette filter assembly incorporating the patented ornamental design features disclosed and claimed in the CASSETTE FILTER Design Patents.

130.  Plaintiff KXT is informed and believes that offers for sale and sales of said infringing device have been widely and repeatedly made in the United States by and on behalf of Defendant Waterfall through interactive websites on the Internet and through other means. Exhibit E.

131.  Plaintiff KXT is informed and believes that Defendant Waterfall knew or should have known of the CASSETTE FILTER Technology Patents, and that their activities would lead to direct infringement thereof.

132.  Plaintiff KXT is informed and believes that the infringement of the CASSETTE FILTER Technology Patents by Defendant Waterfall by making, using, offering for sale and selling said infringing device, and by continuing to do so has been repeated and willful with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

133.  As a direct and proximate result of Defendant Waterfall's acts of patent infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

134.  Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant Waterfall is preliminarily and permanently enjoined from their unlawful and willful infringement of the CASSETTE FILTER Technology Patents, Plaintiff KXT will suffer irreparable harm.

### ELEVENTH COUNT
### Patent Infringement of the CASSETTE FILTER Technology Patents
### (as to Bluesky d/b/a IcePure)

135.  Plaintiff realleges and incorporates herein the allegations of paragraphs 1-41 and 81-88 inclusive.

136.  Plaintiff KXT is informed and believes that Defendant IcePure has infringed Claims 1-5 and 11-17 of the '225 Patent under 35 U.S.C. § 271(a) by making, using, offering for sale and/or selling in this district and elsewhere in the United States a filter housing assembly identified by

the invention disclosed and claimed in the '225 Patent. Such infringing device includes the replacement filter by IcePure for the Frigidaire PureSource WF2CB filter cartridge, Model No. RWF3300A. Exhibit F.

137. Photographs of Defendant IcePure's replacement filter and its packaging are attached in Exhibit F.

138. Defendant IcePure's replacement filter embodies all of the limitations and features of Claims 1-5 and 11-15 of the '225 Patent as shown in the annotated photos of Exhibit F, including:

a)    an arrow shaped elongated member 100 parallel with an upper surface 105 of the cassette 110;

b)    the elongated member having ends 112, 114 and including a base portion 116 attached to the upper housing surface 105 the cross-section of which is a substantially planer segment extending to the upper surface;

c)    an upper receiver portion 120 having at least one retaining surface 122;

d)    a first reinforcement member 124 extending outward from the base portion adjacent one of the ends of the elongated member and perpendicular to the elongated member; and

e)    a second reinforcement member 126 extending outward from the base portion adjacent the opposite end of the elongated member and perpendicular to the elongated member the reinforcement members affixed to the base portion and the upper housing surface.

139. Plaintiff KXT is informed and believes that Defendant IcePure has infringed the CASSETTE FILTER Design Patents by making, using, offering for sale and/or selling in this

district and elsewhere in the United States a cassette filter assembly incorporating the patented ornamental design features disclosed and claimed in the CASSETTE FILTER Design Patents.

140.  Plaintiff KXT is informed and believes that offers for sale and sales of said infringing device have been widely and repeatedly made in the United States by and on behalf of Defendant IcePure through interactive websites on the Internet and through other means. Exhibit F.

141.  Plaintiff KXT is informed and believes that Defendant IcePure knew or should have known of the CASSETTE FILTER Technology Patents, and that their activities would lead to direct infringement thereof.

142.  Plaintiff KXT is informed and believes that the infringement of the CASSETTE FILTER Technology Patents by Defendant IcePure by making, using, offering for sale and selling said infringing device, and by continuing to do so has been repeated and willful with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

143.  As a direct and proximate result of Defendant IcePure's acts of patent infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

144.  Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant IcePure is preliminarily and permanently enjoined from their unlawful and willful infringement of the CASSETTE FILTER Technology Patents, Plaintiff KXT will suffer irreparable harm.

### TWELFTH COUNT
### *Patent Infringement of the CASSETTE FILTER Technology Patents*
### *(as to Dista Filter d/b/a Dista)*

145. Plaintiff realleges and incorporates herein the allegations of paragraphs 1-41 and 108-115 inclusive.

146. Plaintiff KXT is informed and believes that Defendant Dista has infringed Claims 1-5 and 11-17 of the '225 Patent under 35 U.S.C. § 271(a) by making, using, offering for sale and/or selling in this district and elsewhere in the United States a filter housing assembly identified by the invention disclosed and claimed in the '225 Patent. Such infringing device includes the replacement filter by Dista for the Frigidaire PureSource WF2CB filter cartridge, Model No. DWF-33. Exhibit I.

147. Photographs of Defendant Dista's replacement filter and its packaging are attached in Exhibit I.

148. Defendant Dista's replacement filter embodies all of the limitations and features of Claims 1-5 and 11-15 of the '225 Patent as shown in the annotated photos of Exhibit I, including:

a) an arrow shaped elongated member 100 parallel with an upper surface 105 of the cassette 110;

b) the elongated member having ends 112, 114 and including a base portion 116 attached to the upper housing surface 105 the cross-section of which is a substantially planer segment extending to the upper surface;

c) an upper receiver portion 120 having at least one retaining surface 122;

d)  a first reinforcement member 124 extending outward from the base portion adjacent one of the ends of the elongated member and perpendicular to the elongated member; and

e)  a second reinforcement member 126 extending outward from the base portion adjacent the opposite end of the elongated member and perpendicular to the elongated member the reinforcement members affixed to the base portion and the upper housing surface.

149. Plaintiff KXT is informed and believes that Defendant Dista has infringed the CASSETTE FILTER Design Patents by making, using, offering for sale and/or selling in this district and elsewhere in the United States a cassette filter assembly incorporating the patented ornamental design features disclosed and claimed in the CASSETTE FILTER Design Patents.

150. Plaintiff KXT is informed and believes that offers for sale and sales of said infringing device have been widely and repeatedly made in the United States by and on behalf of Defendant Dista through interactive websites on the Internet and through other means. Exhibit I.

151. Plaintiff KXT is informed and believes that Defendant Dista knew or should have known of the CASSETTE FILTER Technology Patents, and that their activities would lead to direct infringement thereof.

152. Plaintiff KXT is informed and believes that the infringement of the CASSETTE FILTER Technology Patents by Defendant Dista by making, using, offering for sale and selling said infringing device, and by continuing to do so has been repeated and willful with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

153.  As a direct and proximate result of Defendant Dista's acts of patent infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

154.  Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant Dista is preliminarily and permanently enjoined from their unlawful and willful infringement of the CASSETTE FILTER Technology Patents, Plaintiff KXT will suffer irreparable harm.

### THIRTEENTH COUNT
### Patent Infringement of the CASSETTE FILTER Technology Patents
### (as to Eternawater)

155.  Plaintiff realleges and incorporates herein the allegations of paragraphs 1-41 and 117-124 inclusive.

156.  Plaintiff KXT is informed and believes that Defendant Eternawater has infringed Claims 1-5 and 11-17 of the '225 Patent under 35 U.S.C. § 271(a) by making, using, offering for sale and/or selling in this district and elsewhere in the United States a filter housing assembly identified by the invention disclosed and claimed in the '225 Patent. Such infringing device includes the replacement filter by Eternawater for the Frigidaire PureSource WF2CB filter cartridge, Model No. EWRF1016. Exhibit J.

157. Photographs of Defendant Eternawater's replacement filter and its packaging are attached in Exhibit J.

158.  Defendant Eternawater's replacement filter embodies all of the limitations and features of Claims 1-5 and 11-15 of the '225 Patent as shown in the annotated photos of Exhibit J, including:

a)  an arrow shaped elongated member 100 parallel with an upper surface 105 of the cassette 110;

b)  the elongated member having ends 112, 114 and including a base portion 116 attached to the upper housing surface 105 the cross-section of which is a substantially planer segment extending to the upper surface;

c)  an upper receiver portion 120 having at least one retaining surface 122;

d)  a first reinforcement member 124 extending outward from the base portion adjacent one of the ends of the elongated member and perpendicular to the elongated member; and

e)  a second reinforcement member 126 extending outward from the base portion adjacent the opposite end of the elongated member and perpendicular to the elongated member the reinforcement members affixed to the base portion and the upper housing surface.

159.  Plaintiff KXT is informed and believes that Defendant Eternawater has infringed the CASSETTE FILTER Design Patents by making, using, offering for sale and/or selling in this district and elsewhere in the United States a cassette filter assembly incorporating the patented ornamental design features disclosed and claimed in the CASSETTE FILTER Design Patents.

160.  Plaintiff KXT is informed and believes that offers for sale and sales of said infringing device have been widely and repeatedly made in the United States by and on behalf of Defendant Eternawater through interactive websites on the Internet and through other means. Exhibit J.

161.  Plaintiff KXT is informed and believes that Defendant Eternawater knew or should have known of the CASSETTE FILTER Technology Patents, and that their activities would lead to direct infringement thereof.

162.  Plaintiff KXT is informed and believes that the infringement of the CASSETTE FILTER Technology Patents by Defendant Eternawater by making, using, offering for sale and selling said infringing device, and by continuing to do so has been repeated and willful with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

163.  As a direct and proximate result of Defendant Eternawater's acts of patent infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

164.  Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant Eternawater is preliminarily and permanently enjoined from their unlawful and willful infringement of the CASSETTE FILTER Technology Patents, Plaintiff KXT will suffer irreparable harm.

**FOURTEENTH COUNT**
**UNFAIR COMPETITION IN VIOLATION OF THE LANHAM ACT**
**(15 U.S.C. §§ 1125, Et Seq.)**
**(as to Zuma Water Filters, Inc. d/b/a Zuma Filters)**

165.  Plaintiff realleges and incorporates herein the allegations of paragraphs 1-50 inclusive.

166.  This is an action for unfair competition in the conduct of the Defendant Zuma's trade in violation of the Lanham Act, Section 43 (15 U.S.C. § 1125(a)).

167. Plaintiff KXT is informed and believes that Defendant Zuma has sold, advertised, promoted and continues to sell, advertise, and promote competing goods and services offered by KXT in this district and in the same channels of interstate commerce as Plaintiff, which falsely bear the certified mark of the Water Quality Association ("WQA"). Exhibit A.

168. The WQA is a not-for-profit association for the residential, commercial, and industrial water treatment industry.

169. The WQA certifies products for the water treatment industry. As stated on the WQA website (www.wqa.org/product-cert):

> *Certified Products Have a "Leg Up" in the Marketplace*
> Finding quality products in a marketplace flooded with options can be challenging. How can you tell if a product is safe, reliable, durable and capable of meeting the claims made on its packaging and literature?
> WQA's Certified Product Listings are available to help connect consumers with water treatment products that have been tested and certified to industry standards.
> *WQA's Gold Seal Product Certification Program ensures that the product is constructed or formulated from safe materials, the claims listed on the packaging are backed by test data, and the product will hold up under normal usage conditions.*
> WQA maintains a complete listing of all products and components that have earned the Gold Seal and Sustainability Marks. *Only products that pass the rigorous testing requirements of industry standards, pass annual manufacturing facility audits, and comply with WQA's Certification Schemes can be found in this listing.*

www.wqa.org/product-cert (emphasis added); Exhibit P.

170. Some of the benefits of a WQA certification include, *inter alia*: a) certified products bearing a distinguished WQA Mark indicate that the product has undergone evaluation and testing to verify that the product will perform as the certified claims indicate, which provides consumers a very simple way to recognize products that will perform the way the packaging

indicates it will; b) WQA certified products allow for consumers to target the specific contaminant issues with confidence that the product does what it claims it will do; c) WQA certified products are demonstrated to pass some states or local city specific regulations (e.g., California has passed new legislation that will require an ANSI accredited certifier to issue certification to products making health claims before they can be legally sold in California. Products certified by WQA are demonstrated to be safe for purchase in California.). Exhibit P.

171. Section 43 of the Lanham Act states in pertinent part:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, *false or misleading description of fact, or false or misleading representation of fact, which—*

(A) *is likely to* cause confusion, or to cause mistake, or to *deceive as to the* affiliation, connection, or association of such person with another person, or as to the origin, *sponsorship, or approval of his or her goods,* services, or commercial activities by another person, *or*

(B) *in commercial advertising or promotion, misrepresents the nature, characteristics, qualities,* or geographic origin *of his or her or another person's goods,* services, or commercial activities,

*shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.*

15 U.S.C. § 1125 (emphasis added).

172. On information and belief, Defendant Zuma's use of the WQA mark in this district is likely to deceive purchasers and potential customers as to the sponsorship or approval of Defendant Zuma's goods, and misrepresents the nature, characteristic, and quality of its goods.

173.  As a direct and proximate result of Defendant Zuma's acts of unfair competition, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain damages in an amount not presently known.

174.  Defendant Zuma's unfair competition will continue unless enjoined by this Court.

### FIFTEENTH COUNT
### UNFAIR COMPETITION IN VIOLATION OF THE LANHAM ACT
### (15 U.S.C. §§ 1125, Et Seq.)
### (as to Waterfall Filter Company d/b/a Waterfall Filter)

175.  Plaintiff realleges and incorporates herein the allegations of paragraphs 1-41, 72-79, and 126-134 inclusive.

176.  This is an action for unfair competition in the conduct of the Defendant Waterfall's trade in violation of the Lanham Act, Section 43 (15 U.S.C. § 1125(a)).

177.  Plaintiff KXT is informed and believes that Defendant Waterfall has sold, advertised, promoted and continues to sell, advertise, and promote competing goods and services offered by KXT in this district and in the same channels of interstate commerce as Plaintiff, which falsely bear the certified mark of the Water Quality Association ("WQA"). Exhibit E.

178.  The WQA is a not-for-profit association for the residential, commercial, and industrial water treatment industry.

179.  The WQA certifies products for the water treatment industry. As stated on the WQA website (www.wqa.org/product-cert):

> *Certified Products Have a "Leg Up" in the Marketplace*
> Finding quality products in a marketplace flooded with options can be challenging. How can you tell if a product is safe, reliable, durable and capable of meeting the claims made on its packaging and literature?

WQA's Certified Product Listings are available to help connect consumers with water treatment products that have been tested and certified to industry standards.

*WQA's Gold Seal Product Certification Program ensures that the product is constructed or formulated from safe materials, the claims listed on the packaging are backed by test data, and the product will hold up under normal usage conditions.*

WQA maintains a complete listing of all products and components that have earned the Gold Seal and Sustainability Marks. *Only products that pass the rigorous testing requirements of industry standards, pass annual manufacturing facility audits, and comply with WQA's Certification Schemes can be found in this listing.*

www.wqa.org/product-cert (emphasis added); Exhibit P.

180. Some of the benefits of a WQA certification include, *inter alia*: a) certified products bearing a distinguished WQA Mark indicate that the product has undergone evaluation and testing to verify that the product will perform as the certified claims indicate, which provides consumers a very simple way to recognize products that will perform the way the packaging indicates it will; b) WQA certified products allow for consumers to target the specific contaminant issues with confidence that the product does what it claims it will do; c) WQA certified products are demonstrated to pass some states or local city specific regulations (e.g., California has passed new legislation that will require an ANSI accredited certifier to issue certification to products making health claims before they can be legally sold in California. Products certified by WQA are demonstrated to be safe for purchase in California.). Exhibit P.

181. Section 43 of the Lanham Act states in pertinent part:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or

any combination thereof, or any false designation of origin, *false or misleading description of fact, or false or misleading representation of fact, which—*

(A) *is likely to* cause confusion, or to cause mistake, or to *deceive as to the* affiliation, connection, or association of such person with another person, or as to the origin, *sponsorship, or approval of his or her goods,* services, or commercial activities by another person, *or*

(B) *in commercial advertising or promotion, misrepresents the nature, characteristics, qualities*, or geographic origin *of his or her or another person's goods,* services, or commercial activities,

*shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.*

15 U.S.C. § 1125 (emphasis added).

182.  On information and belief, Defendant Waterfall's use of the WQA mark in this district is likely to deceive purchasers and potential customers as to the sponsorship or approval of Defendant Waterfall's goods, and misrepresents the nature, characteristic, and quality of its goods.

183.  As a direct and proximate result of Defendant Waterfall's acts of unfair competition, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain damages in an amount not presently known.

184.  Defendant Waterfall's unfair competition will continue unless enjoined by this Court.

### SIXTEENTH COUNT
### UNFAIR COMPETITION IN VIOLATION OF THE LANHAM ACT
### *(15 U.S.C. §§ 1125, Et Seq.)*
### *(as to Dista Filter d/b/a Dista)*

185.  Plaintiff realleges and incorporates herein the allegations of paragraphs 1-41, 108-115, and 146-154 inclusive.

186.  This is an action for unfair competition in the conduct of the Defendant Dista's trade in violation of the Lanham Act, Section 43 (15 U.S.C. § 1125(a)).

187. Plaintiff KXT is informed and believes that Defendant Dista has sold, advertised, promoted and continues to sell, advertise, and promote competing goods and services offered by KXT in this district and in the same channels of interstate commerce as Plaintiff, which falsely bear the certified mark of the Water Quality Association ("WQA"). Exhibit I.

188. The WQA is a not-for-profit association for the residential, commercial, and industrial water treatment industry.

189. The WQA certifies products for the water treatment industry. As stated on the WQA website (www.wqa.org/product-cert):

> *Certified Products Have a "Leg Up" in the Marketplace*
> Finding quality products in a marketplace flooded with options can be challenging. How can you tell if a product is safe, reliable, durable and capable of meeting the claims made on its packaging and literature?
> WQA's Certified Product Listings are available to help connect consumers with water treatment products that have been tested and certified to industry standards.
> *WQA's Gold Seal Product Certification Program ensures that the product is constructed or formulated from safe materials, the claims listed on the packaging are backed by test data, and the product will hold up under normal usage conditions.*
> WQA maintains a complete listing of all products and components that have earned the Gold Seal and Sustainability Marks. *Only products that pass the rigorous testing requirements of industry standards, pass annual manufacturing facility audits, and comply with WQA's Certification Schemes can be found in this listing.*

www.wqa.org/product-cert (emphasis added); Exhibit P.

190. Some of the benefits of a WQA certification include, *inter alia*: a) certified products bearing a distinguished WQA Mark indicate that the product has undergone evaluation and testing to verify that the product will perform as the certified claims indicate, which provides consumers a very simple way to recognize products that will perform the way the packaging

indicates it will; b) WQA certified products allow for consumers to target the specific contaminant issues with confidence that the product does what it claims it will do; c) WQA certified products are demonstrated to pass some states or local city specific regulations (e.g., California has passed new legislation that will require an ANSI accredited certifier to issue certification to products making health claims before they can be legally sold in California. Products certified by WQA are demonstrated to be safe for purchase in California.). Exhibit P.

191.  Section 43 of the Lanham Act states in pertinent part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, *false or misleading description of fact, or false or misleading representation of fact, which—*

> (A) *is likely to* cause confusion, or to cause mistake, or to *deceive as to the* affiliation, connection, or association of such person with another person, or as to the origin, *sponsorship, or approval of his or her goods,* services, or commercial activities by another person, *or*

> (B) *in commercial advertising or promotion, misrepresents the nature, characteristics, qualities,* or geographic origin *of his or her or another person's goods,* services, or commercial activities,

> *shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.*

15 U.S.C. § 1125 (emphasis added).

192.  On information and belief, Defendant Dista's use of the WQA mark in this district is likely to deceive purchasers and potential customers as to the sponsorship or approval of Defendant Dista's goods, and misrepresents the nature, characteristic, and quality of its goods.

193.  As a direct and proximate result of Defendant Dista's acts of unfair competition, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain damages in an amount not presently known.

194.  Defendant Dista's unfair competition will continue unless enjoined by this Court.

### SEVENTEENTH COUNT
### VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT UNDER CONNECTICUT GENERAL STATUTES §§ 42-110a, ET SEQ.
### (as to Zuma Water Filters, Inc. d/b/a Zuma Filters)

195.  Plaintiff realleges and incorporates herein the allegations of paragraphs 1-50 and 166-174 inclusive.

196.  This is an action for unfair methods of competition, and unfair and deceptive acts and practices in the conduct of the Defendant Zuma's trade in violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), pursuant to C.G.S. §§ 42-11Oa, *et seq*.

197.  This Court has pendent jurisdiction under 28 U.S.C. § 1367(a). Venue is proper under 28 U.S.C. § 1391.

198.  By committing the acts herein alleged, Defendant Zuma has engaged in unfair methods of competition and unfair and deceptive acts and practice in the conduct of trade within the State of Connecticut in violation of C.G.S. §§ 42-110a, *et seq*., causing confusion to consumers in the trade, damage and loss profits to Plaintiff.

199. Defendant Zuma knew or should have known that the aforementioned acts are in violation of C.G.S. §§ 42-110a, *et seq*.

200. Plaintiff KXT has suffered an ascertainable loss of money and property as a result of Defendant Zuma's acts or practices in this district prohibited by C.G.S. 42-110a, *et seq*.

### EIGHTEENTH COUNT
### VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT UNDER CONNECTICUT GENERAL STATUTES §§ 42-110a, ET SEQ.
### (as to Waterfall Filter Company d/b/a Waterfall Filter)

201. Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-41, 72-79, 126-134, and 176-184 inclusive.

202. This is an action for unfair methods of competition, and unfair and deceptive acts and practices in the conduct of the Defendant Waterfall's trade in violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), pursuant to C.G.S. §§ 42-11Oa, et seq.

203. This Court has pendent jurisdiction under 28 U.S.C. § 1367(a). Venue is proper under 28 U.S.C. § 1391.

204. By committing the acts herein alleged, Defendant Waterfall has engaged in unfair methods of competition and unfair and deceptive acts and practice in the conduct of trade within the State of Connecticut in violation of C.G.S. §§ 42-110a, et seq., causing confusion to consumers in the trade, damage and loss profits to Plaintiff.

205. Defendant Waterfall knew or should have known that the aforementioned acts are in violation of C.G.S. §§ 42-110a, et seq.

206. Plaintiff KXT has suffered an ascertainable loss of money and property as a result of Defendant Waterfall's acts or practices in this district prohibited by C.G.S. 42-110a, et seq.

### NINETEENTH COUNT
### VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT UNDER
### CONNECTICUT GENERAL STATUTES §§ 42-110a, ET SEQ.
### *(as to Dista Filter d/b/a Dista)*

207.  Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-41, 108-115, 146-154, and 186-194 inclusive.

208.  This is an action for unfair methods of competition, and unfair and deceptive acts and practices in the conduct of the Defendant Dista's trade in violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), pursuant to C.G.S. §§ 42-11Oa, et seq.

209.  This Court has pendent jurisdiction under 28 U.S.C. § 1367(a). Venue is proper under 28 U.S.C. § 1391.

210.  By committing the acts herein alleged, Defendant Dista has engaged in unfair methods of competition and unfair and deceptive acts and practice in the conduct of trade within the State of Connecticut in violation of C.G.S. §§ 42-110a, et seq., causing confusion to consumers in the trade, damage and loss profits to Plaintiff.

211.  Defendant Dista knew or should have known that the aforementioned acts are in violation of C.G.S. §§ 42-110a, et seq.

212.  Plaintiff KXT has suffered an ascertainable loss of money and property as a result of Defendant Dista's acts or practices in this district prohibited by C.G.S. 42-110a, et seq.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff KX Technologies, LLC prays for relief as follows:

1.  That each respective Defendant, its respective officers, agents, servants, employees and attorneys, and all other persons, firms, or corporations acting in concert or participation with it, be enjoined and restrained, during the pendency of this action and permanently thereafter, from making, using, offering for sale or selling any and all goods which infringe the aforementioned United States patents;

2.  That Plaintiff KXT recover its damages sustained as a result of each respective Defendant's infringement pursuant to 35 U.S.C. § 284;

3.  That each respective Defendant's infringement be independently adjudged to be willful and this case declared exceptional, and that Plaintiff's damages be trebled, pursuant to 35 U.S.C. § 284;

4.  That Plaintiff recover its reasonable costs, expenses, and attorney fees, pursuant to 35 U.S.C. § 285;

5.  That each Defendant, its respective officers, agents, servants, employees, and attorneys, and all other persons, firms, or corporations acting in concert or participation with it, be ordered to vacate or otherwise destroy infringing products, advertisements, catalogs, brochures, and alter all internet sites that promote the infringing goods to remove any and all reference to the infringing products, including implementing the remedies pursuant to 15 U.S.C. § 1118;

6.  That each respective Defendant account for (a) all gains, profits, and advantages derived by said trade practices and unfair competition, and (b) all gains, profits, and advantages derived by each Defendant's respective infringement of Plaintiffs intellectual property; and

7.  That Plaintiff granted such other and further relief as the Court deems just and proper.

## VII. DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff KX Technologies, LLC hereby demands a jury trial on all issues raised by the claims herein and triable of right by a jury.


Respectfully submitted,

**KX TECHNOLOGIES, LLC**


Date:   August  23, 2016                    By:   /s/ Robert Curcio

                                                Robert Curcio
                                                Fed. Bar No. CT18791


                                            By:  /s/ David R. Pegnataro
                                                David R. Pegnataro
                                                    Fed. Bar No. CT28854

**DELIO, PETERSON & CURCIO, LLC**
700 State Street, Suite 402
New Haven, CT  06511
Tel: 203-787-0595
Fax: 203-787-5818
Email: efilings@delpet.com
Attorneys for Plaintiff

KXIN908_Complaint.doc