# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KX TECHNOLOGIES LLC | ) | |
| Plaintiff | ) | **Amended Complaint for Damages and** |
| | ) | **Injunctive Relief for Patent Infringement,** |
| v. | ) | **False Advertising, Unfair Competition,** |
| | ) | **and Unfair Trade Practices** |
| ZUMA WATER FILTERS, INC. | ) | |
| d/b/a ZUMA FILTERS, | ) | Case No.:   3:16-cv-01433-CSH |
| | ) | |
| U.S. WATER FILTERS, INC. | ) | Date:       December 16, 2016 |
| WATER FILTERS DIRECT, LLC | ) | |
| d/b/a TIER1, | ) | |
| | ) | |
| CLEARWATER FILTERS | ) | |
| d/b/a MIST BY CLEARWATER, | ) | |
| | ) | |
| WATERFALL FILTER COMPANY | ) | |
| d/b/a WATERFALL FILTER, | ) | |
| | ) | |
| BLUESKY | ) | |
| d/b/a ICEPURE, | ) | |
| | ) | |
| BEST FILTERS | ) | |
| d/b/a BEST, | ) | |
| | ) | |
| DISTA FILTER | ) | |
| d/b/a DISTA, | ) | |
| | ) | |
| ALPINE WATER | ) | |
| d/b/a ALPINE WATER, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BRIXTON HOLDINGS LLC | ) | |
| d/b/a ETERNAWATER | ) | |
| Defendants | ) | |
| | ) | |

## AMENDED COMPLAINT

Plaintiff KX Technologies LLC ("KXT") alleges as follows:

## I.   NATURE OF THE ACTION

1.   This is a civil action seeking damages and injunctive relief for patent infringement under the patent laws of the United States, Title 35 of the United States Code §§ 1, *et seq.*, false advertising and unfair competition under the Lanham Act, section 43 (15 U.S.C. § 1125), and unfair trade practices under the Connecticut Unfair Trade Practices Act (CUTPA), C.G.S. §§ 42-110a, *et seq*.

## II.       JURISDICTION AND VENUE

2.   Jurisdiction of this Court is proper pursuant to Title 28 U.S.C. §§ 1331 and 1338(a).

3.   This cause of action arises in part under the Lanham Act, Section 43 (15 U.S.C. § 1125). Subject matter jurisdiction for the Lanham Act claim is conferred on this Court by the Lanham Act, section 39 (15 U.S.C. § 1121).

4.   This cause of action also arises in part under the Connecticut Unfair Trade Practices Act (CUTPA), C.G.S. §§ 42-110a, *et seq*. Subject matter jurisdiction for the CUTPA claim is conferred on this Court by 28 U.S.C. § 1338(b).

5.   Supplemental jurisdiction for the CUTPA claim is conferred on this Court by 28 U.S.C. § 1367(a).

6.   Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b).

## III.       PARTIES

7.   Plaintiff, KX Technologies LLC ("KXT"), a Delaware limited liability company, is authorized to do business in the State of Connecticut, having a principal place of business at 55 Railroad Avenue, West Haven, Connecticut 06516.

8.   Plaintiff, KXT, is informed and believes that Defendant, Zuma Water Filters, Inc. d/b/a Zuma Filters, is a corporation organized and existing under the laws of the State of California. It is assigned Entity Number C3397335 by the California Secretary of State, and has a principal place of business at 556 South Fair Oaks Avenue, Suite 504, Pasadena, CA  91105. Exhibit A.

9.   Plaintiff KXT is informed and believes that Defendant Zuma Water Filters, Inc. d/b/a Zuma Filters transacts business in this district and has repeatedly solicited business in this district through an interactive website, including but not limited to zumafilters.com, houseoffilters.com, and Amazon.com, and has sold infringing water filter cartridges in this district. Exhibit A.

10. Plaintiff KXT is informed and believes that Defendant, Water Filters Direct LLC d/b/a Tier1 is a domestic limited liability company organized and existing under the laws of the state of Minnesota. Water Filters Direct LLC is assigned Entity Number 33592-LLC by the Minnesota Secretary of State, and has a principal place of business at 560 22nd Street, Zumbrota, MN 55992. Exhibit B.

11. Plaintiff KXT is informed and believes that Defendant, Water Filters Direct LLC d/b/a Tier1 transacts business in this district and has repeatedly solicited business in this district through an interactive website, including but not limited to fridgefilters.com, and waterfilters.net, and has sold infringing water filter cartridges in this district. Exhibit B.

12. Plaintiff KXT is informed and believes that Defendant, U.S. Water Filters Inc. d/b/a Tier1 is a corporation organized and existing under the laws of the state of Delaware. U.S. Water Filters Inc., has a principal place of business at 560 22nd Street, Zumbrota, MN 55992. Exhibit C.

13. Plaintiff KXT is informed and believes that Defendant, U.S. Water Filters, Inc., is the sole owner of the United States Trademark Registration No. 4,709,090 for selling product in interstate

commerce under the mark "TIER1", including water filtration and purification units and replacement cartridges and filters thereof. Exhibit C.

14. Plaintiff KXT is informed and believes that Defendant, U.S. Water Filters, Inc., transacts business in this district and has repeatedly solicited business in this district through an interactive website, and has sold infringing water filter cartridges in this district. Exhibit C.

15. Plaintiff KXT is informed and believes that Defendant, Clearwater Filters d/b/a Mist by Clearwater is a domestic corporation with an as yet unknown business address selling products in interstate commerce, including water filtration and purification units and replacement cartridges and filters thereof, including the infringing device as alleged herein.

16. Plaintiff KXT is informed and believes that Defendant, Clearwater Filters d/b/a Mist by Clearwater transacts business in this district and has repeatedly solicited business in this district through various interactive websites, including Amazon.com. Exhibit D.

17. Defendant Clearwater Filters d/b/a Mist by Clearwater remains evasive in providing any business address to the public. Plaintiff KXT anticipates the filing of a third party subpoena upon Amazon.com at the onset of this litigation to determine the business address of the Defendant.

18. Plaintiff KXT is informed and believes that Defendant, Waterfall Filter Company d/b/a Waterfall Filter, a domestic limited liability company, organized and existing under the laws of the State of Nevada.  Waterfall Filter Company is assigned entity number E0354842014-7 by the Nevada Secretary of State, and has a principal place of business at 100-126 8020 S. Rainbow B Boulevard, Las Vegas, Nevada 89139. Exhibit E. Upon information and belief, Defendant, Waterfall Filter Company d/b/a Waterfall Filter's, recorded business address is false or otherwise incorrect, and Defendant remains evasive in providing its correct business address to the public.

19. Plaintiff KXT is informed and believes that Defendant Waterfall Filter Company d/b/a Waterfall Filter is the sole owner of the United States Trademark Registration No. 4763656 for selling product in interstate commerce under the mark "Waterfall Filter", including water filtration and purification units and replacement cartridges and filters thereof. Exhibit E.

20. Plaintiff KXT is informed and believes that Defendant Waterfall Filter Company d/b/a Waterfall Filter transacts business in this district and has repeatedly solicited business in this district through various interactive websites, including Amazon.com. Exhibit E.

21. Plaintiff KXT is informed and believes that Defendant Bluesky d/b/a IcePure is a domestic corporation with an as yet unknown business address selling products in interstate commerce, including water filtration and purification units and replacement cartridges and filters thereof, including the infringing device as alleged herein. Exhibit F.

22. Plaintiff KXT is informed and believes that Defendant Bluesky d/b/a IcePure transacts business in this district and has repeatedly solicited business in this district through various interactive websites, including Amazon.com. Exhibit F.

23. Defendant Bluesky d/b/a IcePure remains evasive in providing any business address to the public. Plaintiff KXT anticipates the filing of a third party subpoena upon Amazon.com at the onset of this litigation to determine the business address of the Defendant.

24. Plaintiff KXT is informed and believes that Defendant Best Filters d/b/a Best is a domestic corporation with an as yet unknown business address selling products in interstate commerce, including water filtration and purification units and replacement cartridges and filters thereof, including the infringing device as alleged herein. Exhibit G.

25. Plaintiff KXT is informed and believes that Defendant Best Filters d/b/a Best transacts business in this district and has repeatedly solicited business in this district through various interactive websites, including Amazon.com. Exhibit G.

26. Defendant Best Filters d/b/a Best remains evasive in providing any business address to the public. Plaintiff KXT anticipates the filing of a third party subpoena upon Amazon.com at the onset of this ligation to determine the business address of the Defendant.

27. Plaintiff KXT is informed and believes that Defendant Shareen Canton d/b/a Alpine Water has a business address at 720 White Horse Pike, Absecon, New Jersey 08201. Exhibit H.

28. Plaintiff KXT is informed and believes that Defendant Shareen Canton d/b/a Alpine Water is the sole owner of the United States Trademark Application No. 87087155 for selling product in interstate commerce under the mark "Alpine Water", including refrigerator water filters and replacement cartridges thereof, including the infringing device as alleged herein. Exhibit H.

29. Plaintiff KXT is informed and believes that Defendant Shareen Canton d/b/a Alpine Water transacts business in this district and has repeatedly solicited business in this district through various interactive websites, including Amazon.com. Exhibit H.

30. Plaintiff KXT is informed and believes that Defendant Dista Filter d/b/a Dista is a domestic corporation with an as yet unknown business address selling products in interstate commerce, including water filtration and purification units and replacement cartridges and filters thereof, including the infringing device as alleged herein. Exhibit I.

31. Plaintiff KXT is informed and believes that Defendant Dista Filter d/b/a Dista transacts business in this district and has repeatedly solicited business in this district through various interactive websites, including Amazon.com. Exhibit I.

32. Defendant Dista Filter d/b/a Dista remains evasive in providing any business address to the public. Plaintiff KXT anticipates the filing of a third party subpoena upon Amazon.com at the onset of this litigation to determine the business address of the Defendant.

33. Plaintiff KXT is informed and believes that Defendant Brixton Holdings LLC d/b/a Eternawater is a corporation organized and existing under the laws of the state of Georgia. It is assigned Control Number 13393822 by the Georgia Secretary of State, and has a principal place of business at 7010 Brixton Place, Forsyth, Suwanee, GA 30024. Exhibit J.

34. Plaintiff KXT is informed and believes that Defendant Brixton Holdings LLC d/b/a Eternawater transacts business in this district and has repeatedly solicited business in this district through various interactive websites, including Amazon.com. Exhibit J.

### IV.    FACTUAL BACKGROUND

35. Plaintiff KXT is the Assignee and rightful owner of the following United States Patents, which were duly and legally issued by the United States Patent and Trademark Office: a) U.S. Patent No. 8,673,146, issued on March 18, 2014, titled "PUSH FILTER WITH FLOATING KEY LOCK," (the "'146 Patent"; Exhibit K); and b) U.S. Patent No. 8,137,551, issued on March 20, 2012, titled "PUSH FILTER WITH FLOATING KEY LOCK" (the "'551 Patent"; Exhibit Q); (collectively referred to herein as the "PUSH-PUSH Technology Patents").

36. Relevant independent claims of the '146 Patent include Claims 1 and 15. Claim 1 of the '146 Patent is directed to a filter housing assembly:

    1.    A filter housing assembly comprising:

        a filter housing for enclosing a filter media, said filter housing having a body and a top portion for forming a fluid-tight seal with said body, said filter housing top portion including:

        an ingress port;

        an egress port;

a filter key located on said top portion and having a top surface, longitudinal sides, and lateral sides, each of said filter key longitudinal sides including a plurality of spaced protrusions or fingers extending laterally from said top surface, wherein said fingers include winged extensions having slanted or angled faces for mating attachment to a filter base or manifold.

'146 Patent, Claim 1, Exhibit K.

37. Claim 15 of the '146 Patent is directed to a method for extracting a filter housing assembly from a filter base:

15.   A method for extracting a filter housing assembly from a filter base comprising:

applying an axial insertion force to said filter housing assembly already connected to said filter base towards said filter base thereby inserting a filter key on said filter housing assembly further into a slidable floating lock of said filter base, said filter key having longitudinal sides with a plurality of fingers or spaced protrusions on each of said longitudinal sides;

releasing said slidable floating lock, such that said floating lock moves relative to said filter key under a resilient retraction force;

aligning said plurality of fingers on each longitudinal side of said filter key between fingers or drive keys on said floating lock; and

applying an axial extraction force to said filter housing assembly to remove said filter housing assembly from said filter base.

'146 Patent, Claim 15, Exhibit K.

38. Relevant independent claims of the '551 Patent include Claim 49. Claim 49 of the '551 Patent is directed to a method of attaching a filter housing to a filter base:

49.   A method for attaching a filter housing assembly to a filter base comprising:

inserting ingress and egress ports of said filter housing assembly into ingress and egress stanchions of said filter base;

inserting a filter key of said filter housing assembly having lateral fingers with winged extensions into a slidable floating lock having lateral fingers or drive keys by using said filter key to shift said slidable floating lock longitudinally, whereby said lateral fingers of said filter key transverse said lateral fingers or drive keys of said floating lock; and

releasing said filter housing assembly so that resilient members in said filter base apply an extraction force to said filter housing, moving said filter housing assembly slightly in an axial extraction direction; and

providing a retraction force to said floating lock during said releasing to align said floating lock fingers or drive keys with said filter key fingers, such that extraction of said filter housing assembly is prohibited.

'551 Patent, Claim 49, Exhibit Q.

39. Plaintiff KXT is the assignee and rightful owner of the following United States Patents, which were duly and legally issued by the United States Patent and Trademark Office: a) U.S. Patent No. D656,578, issued on March 27, 2012, titled "CASSETTE FILTER," (the "'578 Patent"; Exhibit L); b) U.S. Patent No. D656,579, issued on March 27, 2012, titled "CASSETTE FILTER AND COVER PLATE" (the "579 Patent"; Exhibit M); c) U.S. Patent No. D656,580, issued on March 27, 2012, titled "CASSETTE FILTER MANIFOLD" (the "580 Patent"; Exhibit N) (the design patents collectively referred to herein as the "CASSETTE FILTER Design Patents"); d) U.S. Patent No. 9,061,225 issued on June 23, 2015, titled "REINFORCED RECEIVER FOR CASSETTE FILTER LOCKING CLIP" (the "225 Patent"; Exhibit O); and e) U.S. Patent No. 9,446,336 issued on September 20, 2016, titled "DUAL CARTRIDGE FILTER STABILIZER" (the "'336 Patent"; Exhibit R) (the design patents and the Reinforced Receiver utility patent are collectively referred to herein as the "CASSETTE FILTER Technology Patents").

40. Relevant independent claims of the '225 Patent include Claims 1 and 11. Claim 1 of the '225 Patent is directed to a receiver for a cassette filter:

1.      A receiver for a cassette filter housing having an upper housing surface the receiver comprising:

an arrow shaped elongated member parallel with an upper surface of the cassette, the elongated member having ends and including a base portion attached to the upper housing surface the cross-section of which is a substantially planer

segment extending to the upper surface, and an upper receiver portion having at least one cavaliered retaining surface; and

a first reinforcement member extending outward from the base portion adjacent one of the ends of the elongated member and perpendicular to the elongated member, and a second reinforcement member extending outward from the base portion adjacent the opposite end of the elongated member and perpendicular to the elongated member the reinforcement members affixed to the base portion and the upper housing surface;

whereby the elongated member is engagable with a locking clip having at least one foot engagable with the at least one retaining surface when the receiver and locking clip are in the locked position and the reinforcement member provides support for the receiver.

'225 Patent, Claim 1; Exhibit O.

41. Claim 11 of the '225 Patent is directed to a cassette filter housing:

11.   A receiver for a cassette filter housing having an upper housing surface the receiver comprising:

a fixed, immobile elongated member parallel with an upper surface of the cassette, the elongated member including a base portion attached to the upper housing surface and an upper receiver portion having at least one retaining surface, said base portion being substantially centered on the elongated member and retains the elongated member in a fixed position; and

at least one triangular reinforced end member integrally formed with the elongated member and the upper housing surface;

whereby the elongated member is engagable with a slidably engaging manifold locking clip having at least one foot engagable with the at least one retaining surface when the receiver and locking clip are in the locked position and the at least one triangular reinforced end member provides support for the receiver.

'225 Patent, Claim 11; Exhibit O.

42. Relevant independent claims of the '336 Patent include Claim 1. Claim 1 of the '336 Patent is directed to a filter housing stabilizing system:

1.   A filter housing stabilizing system comprising:

at least two filter cartridge housing assemblies, each filter cartridge housing assembly having a top end with at least one fluid port, a bottom end, and a lower housing portion;

a top cover connector plate attaching said at least two filter cartridge housing assemblies at said top end;

a bottom cover connector plate having an outer circumferential edge, and covering each axial end of said lower housing portions;

a housing guide attaching each filter cartridge housing assembly, said housing guide attached to or integral with said bottom cover connector plate, and circumferentially encompassing an arcuate section of each of said filter cartridge housing assemblies, wherein said outer circumferential edge of the bottom cover connector plate extends beyond said housing guide; and

a stabilizer in mechanical contact with said at least two filter cartridge housing assemblies, said stabilizer presenting sidewalls for attachment with each of said at least two filter cartridge housing assemblies, and presenting opposing free sides without locking members, said opposing free sides having a distance therebetween, such that the distance between said opposing free sides is no greater than either diameter of said at least two filter cartridge housing assemblies.

'336 Patent, Claim 1, Exhibit R.

## V.    CLAIMS FOR RELIEF

### FIRST COUNT
### Patent Infringement of U.S. Patent No. 8,673,146
### (as to Zuma Water Filters, Inc. d/b/a Zuma Filters)

43. Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42 inclusive.

44. Plaintiff KXT is informed and believes that Defendant Zuma Water Filters, Inc. d/b/a Zuma Filters ("Zuma") has infringed Claims 1, 2, 3, 6, and 7 of the '146 Patent under 35 U.S.C. § 271(a) by making, using, offering for sale and/or selling in this district and elsewhere in the United States a filter housing assembly identified by the invention disclosed and claimed in the '146 Patent. Such infringing device includes the replacement filter by Zuma Filters for the Frigidaire PureSource

ULTRAWF filter cartridge, Model No. OPFE1-RF300 ("Defendants' ULTRAWF Replacement Cartridge"). Exhibit A.

45. Photographs of Defendant Zuma's ULTRAWF Replacement Cartridge and its packaging, and photographs depicting the salient features of the filter key, are attached in Exhibit A.

46. Defendant Zuma's' ULTRAWF Replacement Cartridge embodies all of the limitations and features of Claims 1, 2, 3, 6, and 7 of the '146 Patent as shown in the annotated photos of Exhibit A, including:

a)   a filter housing 10 having an ingress port 12 and an egress port 14;
b)   a filter key 16 located on the top portion of the filter housing, having longitudinal sides 18 and lateral sides 20 including a plurality of spaced protrusions or fingers 22 extending from the top surface of the filter key, where the fingers include winged extensions having slanted or angled faces 24;
c)   the filter key being attached to the filter housing top portion by a snap fit, friction fit, welding, or bonding;
d)   the ingress port and said egress port being off axial center of the filter housing; and
e)   he spaced protrusions or fingers being integrally formed with the filter key.

47. Plaintiff KXT is informed and believes that Defendant Zuma has infringed Claim 15 of the '146 Patent under 35 U.S.C. § 271(b) by actively inducing infringement of the method for extracting a filter housing assembly from a filter base identified by the method disclosed and claimed.

48. Plaintiff KXT is informed and believes that offers for sale and sales of said infringing device have been widely and repeatedly made in the United States by and on behalf of Defendant Zuma through interactive websites on the Internet and through other means.

49. Plaintiff KXT is informed and believes that the direct infringement and inducement of infringement of the '146 Patent by Defendant Zuma by making, using, offering for sale and selling said infringing device has been repeated with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

50. As a direct and proximate result of Defendant Zuma's acts of patent infringement and inducement of infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

51. Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant Zuma is preliminarily and permanently enjoined from their unlawful and willful infringement of the '146 Patent, Plaintiff KXT will suffer irreparable harm.

*SECOND COUNT*
*Patent Infringement of U.S. Patent No. 8,673,146*
*(as to U.S. Water Filters, Inc. d/b/a Tier1 and Water Filters Direct LLC d/b/a Tier1)*

52. Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42 inclusive.

53. Plaintiff KXT is informed and believes that Defendants U.S. Water Filters, Inc. d/b/a Tier1 and Water Filters Direct LLC d/b/a Tier1 (collectively, "Tier1") have infringed Claims 1, 2, 3, 6, and 7 of the '146 Patent under 35 U.S.C. § 271(a) by making, using, offering for sale and/or selling in this district and elsewhere in the United States a filter housing assembly identified by the invention disclosed and claimed in the '146 Patent. Such infringing device includes the replacement filter by U.S. Water Filters, Inc. d/b/a Tier1 and Water Filters Direct LLC d/b/a Tier1 for the Frigidaire PureSource ULTRAWF filter cartridge, Model No. RWF1180 ("Defendants' ULTRAWF Replacement Cartridge"). Exhibits B & C.

54. On January 19, 2016, Defendants Water Filters Direct LLC and U.S. Water Filters, Inc., both doing business under the umbrella entity and/or brand name of "Tier1" were notified by United States Certified Mail (No. 7009 2250 0002 0062 6786) that they were offering for sale and/or selling water filters that infringed the " '146 Patent", and were requested by Plaintiff KXT to cease and desist the infringing activities. Exhibit B.

55. Photographs of Defendants' Tier1 ULTRAWF Replacement Cartridge and its packaging, and photographs depicting the salient features of the filter key, are attached in Exhibit B.

56. Defendants' Tier1 ULTRAWF Replacement Cartridge embodies all of the limitations and features of Claims 1, 2, 3, 6, and 7 of the '146 Patent as shown in the annotated photos of Exhibit B, including:

    a)   a filter housing 10 having an ingress port 12 and an egress port 14;

    b)   a filter key 16 located on the top portion of the filter housing, having longitudinal sides 18 and lateral sides 20 including a plurality of spaced protrusions or fingers 22 extending from the top surface of the filter key, where the fingers include winged extensions having slanted or angled faces 24;

    c)   the filter key being attached to the filter housing top portion by a snap fit, friction fit, welding, or bonding;

    d)   the ingress port and said egress port being off axial center of the filter housing; and

    e)   the spaced protrusions or fingers being integrally formed with the filter key.

57. Plaintiff KXT is informed and believes that Defendants Tier1 have infringed Claim 15 of the '146 Patent under 35 U.S.C. § 271(b) by actively inducing infringement of the method for extracting a filter housing assembly from a filter base identified by the method disclosed and claimed.

58. Plaintiff KXT is informed and believes that offers for sale and sales of said infringing device have been widely and repeatedly made in the United States by and on behalf of Defendants Tier1 through interactive websites on the Internet and through other means. Exhibits B & C.

59. Plaintiff KXT is informed and believes that Defendants knew of the '146 Patent, and knew that their activities would lead to direct infringement of the filter housing assembly claims, and inducing infringement of the method claim for extracting a filter housing assembly, identified by the '146 Patent.

60. Plaintiff KXT is informed and believes that the direct infringement and inducement of infringement of the '146 Patent by Defendants Tier1 by making, using, offering for sale and selling

said infringing device, and by continuing to do so has been repeated and willful with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

61. As a direct and proximate result of Defendants Tier1 acts of patent infringement and inducement of infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

62. Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendants Tier1 are preliminarily and permanently enjoined from their unlawful and willful infringement of the '146 Patent, Plaintiff KXT will suffer irreparable harm.

### THIRD COUNT
### Patent Infringement of U.S. Patent No. 8,673,146
### (as to Clearwater Filters d/b/a Mist by Clearwater)

63. Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42 inclusive.

64. Plaintiff KXT is informed and believes that Defendant Clearwater Filters d/b/a Mist by Clearwater ("Mist") have infringed Claims 1, 2, 3, 6, and 7 of the '146 Patent under 35 U.S.C. § 271(a) by making, using, offering for sale and/or selling in this district and elsewhere in the United States a filter housing assembly identified by the invention disclosed and claimed in the '146 Patent. Such infringing device includes the replacement filter by Clearwater Filters d/b/a Mist by Clearwater for the Frigidaire PureSource ULTRAWF filter cartridge, Model No. CWMF011 ("Defendants' ULTRAWF Replacement Cartridge"). Exhibit D.

65. Photographs of Defendant Mist's ULTRAWF Replacement Cartridge and its packaging, and photographs depicting the salient features of the filter key, are depicted in Exhibit D.

66. Defendant Mist's ULTRAWF Replacement Cartridge embodies all of the limitations and features of Claims 1, 2, 3, 6, and 7 of the '146 Patent as shown in the annotated photos of Exhibit D, including:

a)      a filter housing 10 having an ingress port 12 and an egress port 14;

b)      a filter key 16 located on the top portion of the filter housing, having longitudinal sides 18 and lateral sides 20 including a plurality of spaced protrusions or fingers 22 extending from the top surface of the filter key, where the fingers include winged extensions having slanted or angled faces 24;

c)      the filter key being attached to the filter housing top portion by a snap fit, friction fit, welding, or bonding;

d)      the ingress port and said egress port being off axial center of the filter housing; and

e)      the spaced protrusions or fingers being integrally formed with the filter key.

67. Plaintiff KXT is informed and believes that Defendant Mist has infringed Claim 15 of the '146 Patent under 35 U.S.C. § 271(b) by actively inducing infringement of the method for extracting a filter housing assembly from a filter base identified by the method disclosed and claimed.

68. Plaintiff KXT is informed and believes that offers for sale and sales of said infringing device have been widely and repeatedly made in the United States by and on behalf of Defendant Mist through interactive websites on the Internet and through other means.

69. Plaintiff KXT is informed and believes that the direct infringement and inducement of infringement of the '146 Patent by Defendant Mist by making, using, offering for sale and selling said infringing device has been repeated with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

70. As a direct and proximate result of Defendant Mist's acts of patent infringement and inducement of infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

71. Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant Mist is preliminarily and permanently enjoined from their unlawful infringement of the '146 Patent, Plaintiff KXT will suffer irreparable harm.

### FOURTH COUNT
#### Patent Infringement of U.S. Patent No. 8,673,146
#### (as to Waterfall Filter Company d/b/a Waterfall Filter)

72. Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42 inclusive.

73. Plaintiff KXT is informed and believes that Defendant Waterfall Filter Company d/b/a Waterfall Filter ("Waterfall") has infringed Claims 1, 2, 3, 6, and 7 of the '146 Patent under 35 U.S.C. § 271(a) by making, using, offering for sale and/or selling in this district and elsewhere in the United States a filter housing assembly identified by the invention disclosed and claimed in the '146 Patent. Such infringing device includes the replacement filter by Waterfall Filter Company d/b/a Waterfall Filter for the Frigidaire PureSource ULTRAWF filter cartridge, Model No. WFC4401 ("Defendants' ULTRAWF Replacement Cartridge"). Exhibit E.

74. Photographs of Defendant Waterfall's ULTRAWF Replacement Cartridge and its packaging, and photographs depicting the salient features of the filter key, are depicted in Exhibit E.

75. Defendant Waterfall's ULTRAWF Replacement Cartridge embodies all of the limitations and features of Claims 1, 2, 3, 6, and 7 of the '146 Patent as shown in the annotated photos of Exhibit E, including:

a)     a filter housing 10 having an ingress port 12 and an egress port 14;

b)     a filter key 16 located on the top portion of the filter housing, having longitudinal sides 18 and lateral sides 20 including a plurality of spaced protrusions or fingers 22 extending from the top surface of the filter key, where the fingers include winged extensions having slanted or angled faces 24;

c)     the filter key being attached to the filter housing top portion by a snap fit, friction fit, welding, or bonding;

d)     the ingress port and said egress port being off axial center of the filter housing; and

e)     the spaced protrusions or fingers being integrally formed with the filter key.

76. Plaintiff KXT is informed and believes that Defendant Waterfall has infringed Claim 15 of the '146 Patent under 35 U.S.C. § 271(b) by actively inducing infringement of the method for

extracting a filter housing assembly from a filter base identified by the method disclosed and claimed.

77. Plaintiff KXT is informed and believes that offers for sale and sales of said infringing device have been widely and repeatedly made in the United States by and on behalf of Defendant Waterfall through interactive websites on the Internet and through other means.

78. Plaintiff KXT is informed and believes that the direct infringement and inducement of infringement of the '146 Patent by Defendant Waterfall by making, using, offering for sale and selling said infringing device has been repeated with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

79. As a direct and proximate result of Defendant Waterfall's acts of patent infringement and inducement of infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

80. Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant Waterfall is preliminarily and permanently enjoined from their unlawful and willful infringement of the '146 Patent, Plaintiff KXT will suffer irreparable harm.

### FIFTH COUNT
### Patent Infringement of U.S. Patent No. 8,673,146
### (as to Bluesky d/b/a IcePure)

81. Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42 inclusive.

82. Plaintiff KXT is informed and believes that Defendant Bluesky d/b/a IcePure ("IcePure") has infringed Claims 1, 2, 3, 6, and 7 of the '146 Patent under 35 U.S.C. § 271(a) by making, using, offering for sale and/or selling in this district and elsewhere in the United States a filter housing assembly identified by the invention disclosed and claimed in the '146 Patent. Such infringing device includes the replacement filter by

Bluesky d/b/a IcePure for the Frigidaire PureSource ULTRAWF filter cartridge, Model No. RFC2200A ("Defendants' ULTRAWF Replacement Cartridge"). Exhibit F.

83. Photographs of Defendant IcePure's ULTRAWF Replacement Cartridge and its packaging, and photographs depicting the salient features of the filter key, are depicted in Exhibit F.

84. Defendant IcePure's ULTRAWF Replacement Cartridge embodies all of the limitations and features of Claims 1, 2, 3, 6, and 7 of the '146 Patent as shown in the annotated photos of Exhibit F, including:

   a)   a filter housing 10 having an ingress port 12 and an egress port 14;
   b)   a filter key 16 located on the top portion of the filter housing, having longitudinal sides 18 and lateral sides 20 including a plurality of spaced protrusions or fingers 22 extending from the top surface of the filter key, where the fingers include winged extensions having slanted or angled faces 24;
   c)   the filter key being attached to the filter housing top portion by a snap fit, friction fit welding, or bonding;
   d)   the ingress port and said egress port being off axial center of the filter housing; and
   e)   the spaced protrusions or fingers being integrally formed with the filter key.

85. Plaintiff KXT is informed and believes that Defendant IcePure has infringed Claim 15 of the '146 Patent under 35 U.S.C. § 271(b) by actively inducing infringement of the method for extracting a filter housing assembly from a filter base identified by the method disclosed and claimed.

86. Plaintiff KXT is informed and believes that offers for sale and sales of said infringing device have been widely and repeatedly made in the United States by and on behalf of Defendant IcePure through interactive websites on the Internet and through other means.

87. Plaintiff KXT is informed and believes that the direct infringement and inducement of infringement of the '146 Patent by Defendant IcePure by making, using, offering for sale and selling said infringing device has been repeated with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

88. As a direct and proximate result of Defendant IcePure's acts of patent infringement and inducement of infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

89. Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant IcePure is preliminarily and permanently enjoined from their unlawful and willful infringement of the '146 Patent, Plaintiff KXT will suffer irreparable harm.

### SIXTH COUNT
### Patent Infringement of U.S. Patent No. 8,673,146
### (as to Best Filters d/b/a Best)

90. Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42 inclusive.

91. Plaintiff KXT is informed and believes that Defendant Best Filters d/b/a Best ("Best") have infringed Claims 1, 2, 3, 6, and 7 of the '146 Patent under 35 U.S.C. § 271(a) by making, using, offering for sale and/or selling in this district and elsewhere in the United States a filter housing assembly identified by the invention disclosed and claimed in the '146 Patent. Such infringing device includes the replacement filter by Best for the Frigidaire PureSource ULTRAWF filter cartridge, Model No. ULTRA WF ("Defendant Best's ULTRAWF Replacement Cartridge"). Exhibit G.

92. Photographs of Defendant Best's ULTRAWF Replacement Cartridge and its packaging, and photographs depicting the salient features of the filter key, are attached in Exhibit G.

93. Defendant Best's ULTRAWF Replacement Cartridge embodies all of the limitations and features of Claims 1, 2, 3, 6, and 7 of the '146 Patent as shown in the annotated photos of Exhibit G, including:

    a)       a filter housing 10 having an ingress port 12 and an egress port 14;

    b)       a filter key 16 located on the top portion of the filter housing, having longitudinal sides 18 and lateral sides 20 including a plurality of spaced protrusions or fingers 22

extending from the top surface of the filter key, where the fingers include winged extensions having slanted or angled faces 24;

   c)     the filter key being attached to the filter housing top portion by a snap fit, friction fit, welding, or bonding;

   d)     the ingress port and said egress port being off axial center of the filter housing; and

   e)     the spaced protrusions or fingers being integrally formed with the filter key.

94. Plaintiff KXT is informed and believes that Defendant Best has infringed Claim 15 of the '146 Patent under 35 U.S.C. § 271(b) by actively inducing infringement of the method for extracting a filter housing assembly from a filter base identified by the method disclosed and claimed.

95. Plaintiff KXT is informed and believes that offers for sale and sales of said infringing device have been widely and repeatedly made in the United States by and on behalf of Defendant Best through interactive websites on the Internet and through other means.

96. Plaintiff KXT is informed and believes that the direct infringement and inducement of infringement of the '146 Patent by Defendant Best by making, using, offering for sale and selling said infringing device has been repeated with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

97. As a direct and proximate result of Defendant Best's acts of patent infringement and inducement of infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

98. Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant Best is preliminarily and permanently enjoined from their unlawful and willful infringement of the '146 Patent, Plaintiff KXT will suffer irreparable harm.

***SEVENTH COUNT***
***Patent Infringement of U.S. Patent No. 8,673,146***
***(as to Shireen Canton d/b/a Alpine Water)***

99. Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42 inclusive.

100. Plaintiff KXT is informed and believes that Defendant Shireen Canton d/b/a Alpine Water ("Alpine") have infringed Claims 1, 2, 3, 6, and 7 of the '146 Patent under 35 U.S.C. § 271(a) by making, using, offering for sale and/or selling in this district and elsewhere in the United States a filter housing assembly identified by the invention disclosed and claimed in the '146 Patent. Such infringing device includes the replacement filter by Shireen Canton d/b/a Alpine Water for the Frigidaire PureSource ULTRAWF filter cartridge ("Defendant Alpine's ULTRAWF Replacement Cartridge"). Exhibit H.

101. Photographs of Defendant Alpine's ULTRAWF Replacement Cartridge and its packaging, and photographs depicting the salient features of the filter key, are depicted in Exhibit H.

102. Defendant Alpine's ULTRAWF Replacement Cartridge embodies all of the limitations and features of Claims 1, 2, 3, 6, and 7 of the '146 Patent as shown in the annotated photos of Exhibit H, including:

a)     a filter housing 10 having an ingress port 12 and an egress port 14;

b)     a filter key 16 located on the top portion of the filter housing, having longitudinal sides 18 and lateral sides 20 including a plurality of spaced protrusions or fingers 22 extending from the top surface of the filter key, where the fingers include winged extensions having slanted or angled faces 24;

c)     the filter key being attached to the filter housing top portion by a snap fit, friction fit, welding, or bonding;

d)     the ingress port and said egress port being off axial center of the filter housing; and

e)     the spaced protrusions or fingers being integrally formed with the filter key.

103.   Plaintiff KXT is informed and believes that Defendant has infringed Claim 15 of the '146 Patent under 35 U.S.C. § 271(b) by actively inducing infringement of the method for extracting a filter housing assembly from a filter base identified by the method disclosed and claimed.

104.   Plaintiff KXT is informed and believes that offers for sale and sales of said infringing device have been widely and repeatedly made in the United States by and on behalf of Defendant Alpine through interactive websites on the Internet and through other means.

105.   Plaintiff KXT is informed and believes that the direct infringement and inducement of infringement of the '146 Patent by Defendant Alpine by making, using, offering for sale and selling said infringing device has been repeated with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

106.   As a direct and proximate result of Defendant Alpine's acts of patent infringement and inducement of infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

107.   Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant Alpine is preliminarily and permanently enjoined from their unlawful and willful infringement of the '146 Patent, Plaintiff KXT will suffer irreparable harm.

### EIGHTH COUNT
#### Patent Infringement of U.S. Patent No. 8,673,146
#### (as to Dista Filter d/b/a Dista)

108.   Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42 inclusive.

109.   Plaintiff KXT is informed and believes that Defendant Dista Filter d/b/a Dista ("Dista") has infringed Claims 1, 2, 3, 6, and 7 of the '146 Patent under 35 U.S.C. § 271(a) by making, using, offering for sale and/or selling in this district and elsewhere in the United States a filter housing assembly identified by the invention disclosed and claimed in the '146 Patent. Such infringing device

includes the replacement filter by Dista Filter d/b/a Dista for the Frigidaire PureSource ULTRAWF filter cartridge, Model No. DWF-22 ("Defendant Dista's ULTRAWF Replacement Cartridge"). Exhibit I.

110.   Photographs of Defendant Dista's ULTRAWF Replacement Cartridge and its packaging and photographs depicting the salient features of the filter key, are attached as Exhibit I.

111.   Defendant Dista's ULTRAWF Replacement Cartridge embodies all of the limitations and features of Claims 1, 2, 3, 6, and 7 of the '146 Patent as shown in the annotated photos of Exhibit I, including:

a)   a filter housing 10 having an ingress port 12 and an egress port 14;

b)   a filter key 16 located on the top portion of the filter housing, having longitudinal sides 18 and lateral sides 20 including a plurality of spaced protrusions or fingers 22 extending from the top surface of the filter key, where the fingers include winged extensions having slanted or angled faces 24;

c)   the filter key being attached to the filter housing top portion by a snap fit, friction fit, welding, or bonding;

d)   the ingress port and said egress port being off axial center of the filter housing; and

e)   the spaced protrusions or fingers being integrally formed with the filter key.

112.   Plaintiff KXT is informed and believes that Defendant Dista has infringed Claim 15 of the '146 Patent under 35 U.S.C. § 271(b) by actively inducing infringement of the method for extracting a filter housing assembly from a filter base identified by the method disclosed and claimed.

113.   Plaintiff KXT is informed and believes that offers for sale and sales of said infringing device have been widely and repeatedly made in the United States by and on behalf of Defendant Dista through interactive websites on the Internet and through other means.

114.   Plaintiff KXT is informed and believes that the direct infringement and inducement of infringement of the '146 Patent by Defendant Dista by making, using, offering for sale and selling said infringing device has been repeated with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

115.   As a direct and proximate result of Defendant Dista's acts of patent infringement and inducement of infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

116.   Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant Dista is preliminarily and permanently enjoined from their unlawful and willful infringement of the '146 Patent, Plaintiff KXT will suffer irreparable harm.

*NINTH COUNT*
*Patent Infringement of U.S. Patent No. 8,673,146*
*(as to Brixton Holdings LLC d/b/a Eternawater)*

117.   Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42 inclusive.

118.   Plaintiff KXT is informed and believes that Defendant Brixton Holdings LLC d/b/a Eternawater ("Eternawater") has infringed Claims 1, 2, 3, 6, and 7 of the '146 Patent under 35 U.S.C. § 271(a) by making, using, offering for sale and/or selling in this district and elsewhere in the United States a filter housing assembly identified by the invention disclosed and claimed in the '146 Patent. Such infringing device includes the replacement filter by Eternawater for the Frigidaire PureSource ULTRAWF filter cartridge, Model No. EWRF1022 ("Defendants' ULTRAWF Replacement Cartridge"). Exhibit J.

119.   Photographs of Defendant Eternawater's ULTRAWF Replacement Cartridge and its packaging, and photographs depicting the salient features of the filter key, are depicted in Exhibit J.

120.   Defendant Eternawater's ULTRAWF Replacement Cartridge embodies all of the limitations and features of Claims 1, 2, 3, 6, and 7 of the '146 Patent as shown in the annotated photos of Exhibit J, including:

a)      a filter housing 10 having an ingress port 12 and an egress port 14;
b)      a filter key 16 located on the top portion of the filter housing, having longitudinal sides 18 and lateral sides 20 including a plurality of spaced

protrusions or fingers 22 extending from the top surface of the filter key, where the fingers include winged extensions having slanted or angled faces 24;

c)   the filter key being attached to the filter housing top portion by a snap fit, friction fit, welding, or bonding;

d)   the ingress port and said egress port being off axial center of the filter housing; and

e)   the spaced protrusions or fingers being integrally formed with the filter key.

121.   Plaintiff KXT is informed and believes that Defendant Eternawater has infringed Claim 15 of the '146 Patent under 35 U.S.C. § 271(b) by actively inducing infringement of the method for extracting a filter housing assembly from a filter base identified by the method disclosed and claimed.

122.   Plaintiff KXT is informed and believes that offers for sale and sales of said infringing device have been widely and repeatedly made in the United States by and on behalf of Defendant Eternawater through interactive websites on the Internet and through other means.

123.   Plaintiff KXT is informed and believes that the direct infringement and inducement of infringement of the '146 Patent by Defendant Eternawater by making, using, offering for sale and selling said infringing device, and by continuing to do so has been repeated and willful with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

124.   As a direct and proximate result of Defendant Eternawater's acts of patent infringement and inducement of infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

125.   Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant Eternawater is preliminarily and permanently enjoined from their unlawful and willful infringement of the '146 Patent, Plaintiff KXT will suffer irreparable harm.

## TENTH COUNT
### Patent Infringement of the CASSETTE FILTER Technology Patents
### (as to Waterfall Filter Company d/b/a Waterfall Filter)

126.  Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42 and 72-80 inclusive.

127.  Plaintiff KXT is informed and believes that Defendant Waterfall has infringed Claims 1-5 and 11-17 of the '225 Patent under 35 U.S.C. § 271(a) by making, using, offering for sale and/or selling in this district and elsewhere in the United States a filter housing assembly identified by the invention disclosed and claimed in the '225 Patent. Such infringing device includes the replacement filter by Waterfall for the Frigidaire PureSource WF2CB filter cartridge, Model No. WFC6601. Exhibit E.

128.  Photographs of Defendant Waterfall's replacement filter and its packaging are attached in Exhibit E.

129.  Defendant Waterfall's replacement filter embodies all of the limitations and features of Claims 1-5 and 11-15 of the '225 Patent as shown in the annotated photos of Exhibit E, including:

    a)      an arrow shaped elongated member 100 parallel with an upper surface 105 of the cassette 110;

    b)      the elongated member having ends 112, 114 and including a base portion 116 attached to the upper housing surface 105 the cross-section of which is a substantially planer segment extending to the upper surface;

    c)      an upper receiver portion 120 having at least one retaining surface 122;

    d)      a first reinforcement member 124 extending outward from the base portion adjacent one of the ends of the elongated member and perpendicular to the elongated member; and

    e)      a second reinforcement member 126 extending outward from the base portion adjacent the opposite end of the elongated member and perpendicular to the elongated member the reinforcement members affixed to the base portion and the upper housing surface.

130.   Plaintiff KXT is informed and believes that Defendant Waterfall has infringed the CASSETTE FILTER Design Patents by making, using, offering for sale and/or selling in this district and elsewhere in the United States a cassette filter assembly incorporating the patented ornamental design features disclosed and claimed in the CASSETTE FILTER Design Patents.

131.   Plaintiff KXT is informed and believes that offers for sale and sales of said infringing device have been widely and repeatedly made in the United States by and on behalf of Defendant Waterfall through interactive websites on the Internet and through other means. Exhibit E.

132.   Plaintiff KXT is informed and believes that Defendant Waterfall knew or should have known of the CASSETTE FILTER Technology Patents, and that their activities would lead to direct infringement thereof.

133.   Plaintiff KXT is informed and believes that the infringement of the CASSETTE FILTER Technology Patents by Defendant Waterfall by making, using, offering for sale and selling said infringing device, and by continuing to do so has been repeated and willful with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

134.   As a direct and proximate result of Defendant Waterfall's acts of patent infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

135.   Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant Waterfall is preliminarily and permanently enjoined from their unlawful and willful infringement of the CASSETTE FILTER Technology Patents, Plaintiff KXT will suffer irreparable harm.

### ELEVENTH COUNT
### Patent Infringement of the CASSETTE FILTER Technology Patents
### (as to Bluesky d/b/a IcePure)

136.  Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42 and 81-89 inclusive.

137.  Plaintiff KXT is informed and believes that Defendant IcePure has infringed Claims 1-5 and 11-17 of the '225 Patent under 35 U.S.C. § 271(a) by making, using, offering for sale and/or selling in this district and elsewhere in the United States a filter housing assembly identified by the invention disclosed and claimed in the '225 Patent. Such infringing device includes the replacement filter by IcePure for the Frigidaire PureSource WF2CB filter cartridge, Model No. RWF3300A. Exhibit F.

138.  Photographs of Defendant IcePure's replacement filter and its packaging are attached in Exhibit F.

139.  Defendant IcePure's replacement filter embodies all of the limitations and features of Claims 1-5 and 11-15 of the '225 Patent as shown in the annotated photos of Exhibit F, including:

a)  an arrow shaped elongated member 100 parallel with an upper surface 105 of the cassette 110;

b)  the elongated member having ends 112, 114 and including a base portion 116 attached to the upper housing surface 105 the cross-section of which is a substantially planer segment extending to the upper surface;

c)  an upper receiver portion 120 having at least one retaining surface 122;

d)  a first reinforcement member 124 extending outward from the base portion adjacent one of the ends of the elongated member and perpendicular to the elongated member; and

e)  a second reinforcement member 126 extending outward from the base portion adjacent the opposite end of the elongated member and perpendicular to the elongated member the reinforcement members affixed to the base portion and the upper housing surface.

140. Plaintiff KXT is informed and believes that Defendant IcePure has infringed the CASSETTE FILTER Design Patents by making, using, offering for sale and/or selling in this district

and elsewhere in the United States a cassette filter assembly incorporating the patented ornamental design features disclosed and claimed in the CASSETTE FILTER Design Patents.

141.   Plaintiff KXT is informed and believes that offers for sale and sales of said infringing device have been widely and repeatedly made in the United States by and on behalf of Defendant IcePure through interactive websites on the Internet and through other means. Exhibit F.

142.   Plaintiff KXT is informed and believes that Defendant IcePure knew or should have known of the CASSETTE FILTER Technology Patents, and that their activities would lead to direct infringement thereof.

143.   Plaintiff KXT is informed and believes that the infringement of the CASSETTE FILTER Technology Patents by Defendant IcePure by making, using, offering for sale and selling said infringing device, and by continuing to do so has been repeated and willful with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

144.   As a direct and proximate result of Defendant IcePure's acts of patent infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

145.   Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant IcePure is preliminarily and permanently enjoined from their unlawful and willful infringement of the CASSETTE FILTER Technology Patents, Plaintiff KXT will suffer irreparable harm.

## TWELFTH COUNT
### Patent Infringement of the CASSETTE FILTER Technology Patents
### (as to Dista Filter d/b/a Dista)

146.   Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42 and 108-116 inclusive.

147.   Plaintiff KXT is informed and believes that Defendant Dista has infringed Claims 1-5 and 11-17 of the '225 Patent under 35 U.S.C. § 271(a) by making, using, offering for sale and/or selling in this district and elsewhere in the United States a filter housing assembly identified by the invention disclosed and claimed in the '225 Patent. Such infringing device includes the replacement filter by Dista for the Frigidaire PureSource WF2CB filter cartridge, Model No. DWF-33. Exhibit I.

148.   Photographs of Defendant Dista's replacement filter and its packaging are attached in Exhibit I.

149.   Defendant Dista's replacement filter embodies all of the limitations and features of Claims 1-5 and 11-15 of the '225 Patent as shown in the annotated photos of Exhibit I, including:

    a)    an arrow shaped elongated member 100 parallel with an upper surface 105 of the cassette 110;

    b)    the elongated member having ends 112, 114 and including a base portion 116 attached to the upper housing surface 105 the cross-section of which is a substantially planer segment extending to the upper surface;

    c)    an upper receiver portion 120 having at least one retaining surface 122;

    d)    a first reinforcement member 124 extending outward from the base portion adjacent one of the ends of the elongated member and perpendicular to the elongated member; and

    e)    a second reinforcement member 126 extending outward from the base portion adjacent the opposite end of the elongated member and perpendicular to the elongated member the reinforcement members affixed to the base portion and the upper housing surface.

150.   Plaintiff KXT is informed and believes that Defendant Dista has infringed the CASSETTE FILTER Design Patents by making, using, offering for sale and/or selling in this district and elsewhere in the United States a cassette filter assembly incorporating the patented ornamental design features disclosed and claimed in the CASSETTE FILTER Design Patents.

151.   Plaintiff KXT is informed and believes that offers for sale and sales of said infringing device have been widely and repeatedly made in the United States by and on behalf of Defendant Dista through interactive websites on the Internet and through other means. Exhibit I.

152.   Plaintiff KXT is informed and believes that Defendant Dista knew or should have known of the CASSETTE FILTER Technology Patents, and that their activities would lead to direct infringement thereof.

153.   Plaintiff KXT is informed and believes that the infringement of the CASSETTE FILTER Technology Patents by Defendant Dista by making, using, offering for sale and selling said infringing device, and by continuing to do so has been repeated and willful with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

154.   As a direct and proximate result of Defendant Dista's acts of patent infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

155.   Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant Dista is preliminarily and permanently enjoined from their unlawful and willful infringement of the CASSETTE FILTER Technology Patents, Plaintiff KXT will suffer irreparable harm.

### THIRTEENTH COUNT
#### Patent Infringement of the CASSETTE FILTER Technology Patents
#### (as to Brixton Holdings LLC d/b/a Eternawater)

156.   Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42 and 117-125 inclusive.

157.   Plaintiff KXT is informed and believes that Defendant Eternawater has infringed Claims 1-5 and 11-17 of the '225 Patent under 35 U.S.C. § 271(a) by making, using, offering for sale and/or

selling in this district and elsewhere in the United States a filter housing assembly identified by the invention disclosed and claimed in the '225 Patent. Such infringing device includes the replacement filter by Eternawater for the Frigidaire PureSource WF2CB filter cartridge, Model No. EWRF1016. Exhibit J.

158.  Photographs of Defendant Eternawater's replacement filter and its packaging are attached in Exhibit J.

159.  Defendant Eternawater's replacement filter embodies all of the limitations and features of Claims 1-5 and 11-15 of the '225 Patent as shown in the annotated photos of Exhibit J, including:

a)      an arrow shaped elongated member 100 parallel with an upper surface 105 of the cassette 110;

b)      the elongated member having ends 112, 114 and including a base portion 116 attached to the upper housing surface 105 the cross-section of which is a substantially planer segment extending to the upper surface;

c)      an upper receiver portion 120 having at least one retaining surface 122;

d)      a first reinforcement member 124 extending outward from the base portion adjacent one of the ends of the elongated member and perpendicular to the elongated member; and

e)      a second reinforcement member 126 extending outward from the base portion adjacent the opposite end of the elongated member and perpendicular to the elongated member the reinforcement members affixed to the base portion and the upper housing surface.

160.  Plaintiff KXT is informed and believes that Defendant Eternawater has infringed the CASSETTE FILTER Design Patents by making, using, offering for sale and/or selling in this district and elsewhere in the United States a cassette filter assembly incorporating the patented ornamental design features disclosed and claimed in the CASSETTE FILTER Design Patents.

161.  Plaintiff KXT is informed and believes that offers for sale and sales of said infringing device have been widely and repeatedly made in the United States by and on behalf of Defendant Eternawater through interactive websites on the Internet and through other means. Exhibit J.

162.   Plaintiff KXT is informed and believes that Defendant Eternawater knew or should have known of the CASSETTE FILTER Technology Patents, and that their activities would lead to direct infringement thereof.

163.   Plaintiff KXT is informed and believes that the infringement of the CASSETTE FILTER Technology Patents by Defendant Eternawater by making, using, offering for sale and selling said infringing device, and by continuing to do so has been repeated and willful with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

164.   As a direct and proximate result of Defendant Eternawater's acts of patent infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

165.   Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant Eternawater is preliminarily and permanently enjoined from their unlawful and willful infringement of the CASSETTE FILTER Technology Patents, Plaintiff KXT will suffer irreparable harm.

### FOURTEENTH COUNT
### UNFAIR COMPETITION IN VIOLATION OF THE LANHAM ACT
### (15 U.S.C. §§ 1125, Et Seq.)
### (as to U.S. Water Filters, Inc. d/b/a Tier1 and Water Filters Direct LLC d/b/a Tier1)

166.   Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42 and 52-62 inclusive.

167.   This is an action for unfair competition in the conduct of the Defendant Tier1's trade in violation of the Lanham Act, Section 43 (15 U.S.C. § 1125(a)).

168.   Plaintiff KXT is informed and believes that Defendant Tier1 has sold, advertised, promoted and continues to sell, advertise, and promote competing goods and services offered by

KXT in this district and in the same channels of interstate commerce as Plaintiff, which falsely bear

the certified mark of the Water Quality Association ("WQA"). Exhibit B.

169. The WQA is a not-for-profit association for the residential, commercial, and

industrial water treatment industry.

170. The WQA certifies products for the water treatment industry. As stated on the WQA

website (www.wqa.org/product-cert):

> *Certified Products Have a "Leg Up" in the Marketplace*
> Finding quality products in a marketplace flooded with options can be challenging. How can you tell if a product is safe, reliable, durable and capable of meeting the claims made on its packaging and literature?
> WQA's Certified Product Listings are available to help connect consumers with water treatment products that have been tested and certified to industry standards.
> *WQA's Gold Seal Product Certification Program ensures that the product is constructed or formulated from safe materials, the claims listed on the packaging are backed by test data, and the product will hold up under normal usage conditions.*
> WQA maintains a complete listing of all products and components that have earned the Gold Seal and Sustainability Marks. *Only products that pass the rigorous testing requirements of industry standards, pass annual manufacturing facility audits, and comply with WQA's Certification Schemes can be found in this listing.*

www.wqa.org/product-cert (emphasis added); Exhibit P.

171. Some of the benefits of a WQA certification include, inter alia: a) certified products bearing

a distinguished WQA Mark indicate that the product has undergone evaluation and testing to verify

that the product will perform as the certified claims indicate, which provides consumers a very

simple way to recognize products that will perform the way the packaging indicates it will; b) WQA

certified products allow for consumers to target the specific contaminant issues with confidence that

the product does what it claims it will do; c) WQA certified products are demonstrated to pass some

states or local city specific regulations (e.g., California has passed new legislation that will require an

ANSI accredited certifier to issue certification to products making health claims before they can be

legally sold in California.  Products certified by WQA are demonstrated to be safe for purchase in California.). Exhibit P.

172. Section 43 of the Lanham Act states in pertinent part:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, *false or misleading description of fact, or false or misleading representation of fact, which—*

(A) *is likely to* cause confusion, or to cause mistake, or to *deceive as to the* affiliation, connection, or association of such person with another person, or as to the origin, *sponsorship, or approval of his or her goods,* services, or commercial activities by another person, *or*

(B) *in commercial advertising or promotion, misrepresents the nature, characteristics, qualities*, or geographic origin *of his or her or another person's goods,* services, or commercial activities,
*shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.*
15 U.S.C. § 1125 (emphasis added).

173.   On information and belief, Defendant Tier1's use of the WQA mark in this district is likely to deceive purchasers and potential customers as to the sponsorship or approval of Defendant Tier1's goods, and misrepresents the nature, characteristic, and quality of its goods.

174.   As a direct and proximate result of Defendant Tier1's acts of unfair competition, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain damages in an amount not presently known.

175.   Defendant Tier1's unfair competition will continue unless enjoined by this Court.

### FIFTEENTH COUNT
### UNFAIR COMPETITION IN VIOLATION OF THE LANHAM ACT
### *(15 U.S.C. §§ 1125, Et Seq.)*
### *(as to Waterfall Filter Company d/b/a Waterfall Filter)*

176.   Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42, 72-80, and 126-135 inclusive.

177.   This is an action for unfair competition in the conduct of the Defendant Waterfall's trade in violation of the Lanham Act, Section 43 (15 U.S.C. § 1125(a)).

178.   Plaintiff KXT is informed and believes that Defendant Waterfall has sold, advertised, promoted and continues to sell, advertise, and promote competing goods and services offered by KXT in this district and in the same channels of interstate commerce as Plaintiff, which falsely bear the certified mark of the Water Quality Association ("WQA"). Exhibit E.

179.   The WQA is a not-for-profit association for the residential, commercial, and industrial water treatment industry.

180.   The WQA certifies products for the water treatment industry. As stated on the WQA website (*www.wqa.org/product-cert*):

> *Certified Products Have a "Leg Up" in the Marketplace*
> Finding quality products in a marketplace flooded with options can be challenging. How can you tell if a product is safe, reliable, durable and capable of meeting the claims made on its packaging and literature?
> WQA's Certified Product Listings are available to help connect consumers with water treatment products that have been tested and certified to industry standards.
> *WQA's Gold Seal Product Certification Program ensures that the product is constructed or formulated from safe materials, the claims listed on the packaging are backed by test data, and the product will hold up under normal usage conditions.*
> WQA maintains a complete listing of all products and components that have earned the Gold Seal and Sustainability Marks. *Only products that pass the rigorous testing requirements of industry standards, pass annual manufacturing facility audits, and comply with WQA's Certification Schemes can be found in this listing.*

*www.wqa.org/product-cert* (emphasis added); Exhibit P.

181.   Some of the benefits of a WQA certification include, inter alia: a) certified products bearing a distinguished WQA Mark indicate that the product has undergone evaluation and testing to verify that the product will perform as the certified claims indicate, which provides consumers a very simple way to recognize products that will perform the way the packaging indicates it will; b) WQA certified products allow for consumers to target the specific contaminant issues with confidence that

the product does what it claims it will do; c) WQA certified products are demonstrated to pass some states or local city specific regulations (e.g., California has passed new legislation that will require an ANSI accredited certifier to issue certification to products making health claims before they can be legally sold in California.  Products certified by WQA are demonstrated to be safe for purchase in California.). Exhibit P.

182.   Section 43 of the Lanham Act states in pertinent part:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, *false or misleading description of fact, or false or misleading representation of fact, which—*

(A) *is likely to* cause confusion, or to cause mistake, or to *deceive as to the* affiliation, connection, or association of such person with another person, or as to the origin, *sponsorship, or approval of his or her goods,* services, or commercial activities by another person, *or*

(B) *in commercial advertising or promotion, misrepresents the nature, characteristics, qualities*, or geographic origin *of his or her or another person's goods,* services, or commercial activities, *shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act*.

15 U.S.C. § 1125 (emphasis added).

183.   On information and belief, Defendant Waterfall's use of the WQA mark in this district is likely to deceive purchasers and potential customers as to the sponsorship or approval of Defendant Waterfall's goods, and misrepresents the nature, characteristic, and quality of its goods.

184.   As a direct and proximate result of Defendant Waterfall's acts of unfair competition, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain damages in an amount not presently known.

185.   Defendant Waterfall's unfair competition will continue unless enjoined by this Court.

## SIXTEENTH COUNT
## UNFAIR COMPETITION IN VIOLATION OF THE LANHAM ACT
### (15 U.S.C. §§ 1125, Et Seq.)
### (as to Dista Filter d/b/a Dista)

186.   Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42, 108-116, and 146-155 inclusive.

187.   This is an action for unfair competition in the conduct of the Defendant Dista's trade in violation of the Lanham Act, Section 43 (15 U.S.C. § 1125(a)).

188.   Plaintiff KXT is informed and believes that Defendant Dista has sold, advertised, promoted and continues to sell, advertise, and promote competing goods and services offered by KXT in this district and in the same channels of interstate commerce as Plaintiff, which falsely bear the certified mark of the Water Quality Association ("WQA"). Exhibit I.

189.   The WQA is a not-for-profit association for the residential, commercial, and industrial water treatment industry.

190.   The WQA certifies products for the water treatment industry. As stated on the WQA website (*www.wqa.org/product-cert*):

> *Certified Products Have a "Leg Up" in the Marketplace*
>
> Finding quality products in a marketplace flooded with options can be challenging. How can you tell if a product is safe, reliable, durable and capable of meeting the claims made on its packaging and literature?
>
> WQA's Certified Product Listings are available to help connect consumers with water treatment products that have been tested and certified to industry standards.
>
> *WQA's Gold Seal Product Certification Program ensures that the product is constructed or formulated from safe materials, the claims listed on the packaging are backed by test data, and the product will hold up under normal usage conditions.*
>
> WQA maintains a complete listing of all products and components that have earned the Gold Seal and Sustainability Marks. *Only products that pass the rigorous testing requirements of industry standards, pass annual manufacturing facility audits, and comply with WQA's Certification Schemes can be found in this listing.*

www.wqa.org/product-cert (emphasis added); Exhibit P.

191.   Some of the benefits of a WQA certification include, inter alia: a) certified products bearing a distinguished WQA Mark indicate that the product has undergone evaluation and testing to verify that the product will perform as the certified claims indicate, which provides consumers a very simple way to recognize products that will perform the way the packaging indicates it will; b) WQA certified products allow for consumers to target the specific contaminant issues with confidence that the product does what it claims it will do; c) WQA certified products are demonstrated to pass some states or local city specific regulations (e.g., California has passed new legislation that will require an ANSI accredited certifier to issue certification to products making health claims before they can be legally sold in California.  Products certified by WQA are demonstrated to be safe for purchase in California.). Exhibit P.

192.   Section 43 of the Lanham Act states in pertinent part:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, *false or misleading description of fact, or false or misleading representation of fact, which—*

(A) *is likely to* cause confusion, or to cause mistake, or to *deceive as to the* affiliation, connection, or association of such person with another person, or as to the origin, *sponsorship, or approval of his or her goods,* services, or commercial activities by another person, *or*

(B) *in commercial advertising or promotion, misrepresents the nature, characteristics, qualities*, or geographic origin *of his or her or another person's goods,* services, or commercial activities,
*shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.*
15 U.S.C. § 1125 (emphasis added).

193.   On information and belief, Defendant Dista's use of the WQA mark in this district is likely to deceive purchasers and potential customers as to the sponsorship or approval of Defendant Dista's goods, and misrepresents the nature, characteristic, and quality of its goods.

194.   As a direct and proximate result of Defendant Dista's acts of unfair competition, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain damages in an amount not presently known.

195.   Defendant Dista's unfair competition will continue unless enjoined by this Court.

### SEVENTEENTH COUNT
### VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT UNDER CONNECTICUT GENERAL STATUTES §§ 42-110a, ET SEQ.
(as to U.S. Water Filters, Inc. d/b/a Tier1 and Water Filters Direct LLC d/b/a Tier1)

196.   Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42, 52-62, and 166-175 inclusive.

197.   This is an action for unfair methods of competition, and unfair and deceptive acts and practices in the conduct of the Defendant Tier1's trade in violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), pursuant to C.G.S. §§ 42-110a, et seq.

198.   This Court has pendent jurisdiction under 28 U.S.C. § 1367(a). Venue is proper under 28 U.S.C. § 1391.

199.   By committing the acts herein alleged, Defendant Tier1 has engaged in unfair methods of competition and unfair and deceptive acts and practice in the conduct of trade within the State of Connecticut in violation of C.G.S. §§ 42-110a, et seq., causing confusion to consumers in the trade, damage and loss profits to Plaintiff.

200.   Defendant Tier1 knew or should have known that the aforementioned acts are in violation of C.G.S. §§ 42-110a, et seq.

201.   Plaintiff KXT has suffered an ascertainable loss of money and property as a result of Defendant Tier1's acts or practices in this district prohibited by C.G.S. 42-110a, et seq.

### EIGHTEENTH COUNT
### VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT UNDER
### CONNECTICUT GENERAL STATUTES §§ 42-110a, ET SEQ.
### (as to Waterfall Filter Company d/b/a Waterfall Filter)

202.   Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42, 72-80, 126-135, and 176-185 inclusive.

203.   This is an action for unfair methods of competition, and unfair and deceptive acts and practices in the conduct of the Defendant Waterfall's trade in violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), pursuant to C.G.S. §§ 42-110a, et seq.

204.   This Court has pendent jurisdiction under 28 U.S.C. § 1367(a). Venue is proper under 28 U.S.C. § 1391.

205.   By committing the acts herein alleged, Defendant Waterfall has engaged in unfair methods of competition and unfair and deceptive acts and practice in the conduct of trade within the State of Connecticut in violation of C.G.S. §§ 42-110a, et seq., causing confusion to consumers in the trade, damage and loss profits to Plaintiff.

206.   Defendant Waterfall knew or should have known that the aforementioned acts are in violation of C.G.S. §§ 42-110a, et seq.

207.   Plaintiff KXT has suffered an ascertainable loss of money and property as a result of Defendant Waterfall's acts or practices in this district prohibited by C.G.S. 42-110a, et seq.

### NINETEENTH COUNT
### VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT UNDER
### CONNECTICUT GENERAL STATUTES §§ 42-110a, ET SEQ.
### (as to Dista Filter d/b/a Dista)

208.   Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42, 108-116, 146-155, and 186-195 inclusive.

209.   This is an action for unfair methods of competition, and unfair and deceptive acts and practices in the conduct of the Defendant Dista's trade in violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), pursuant to C.G.S. §§ 42-110a, et seq.

210.   This Court has pendent jurisdiction under 28 U.S.C. § 1367(a). Venue is proper under 28 U.S.C. § 1391.

211.   By committing the acts herein alleged, Defendant Dista has engaged in unfair methods of competition and unfair and deceptive acts and practice in the conduct of trade within the State of Connecticut in violation of C.G.S. §§ 42-110a, et seq., causing confusion to consumers in the trade, damage and loss profits to Plaintiff.

212.   Defendant Dista knew or should have known that the aforementioned acts are in violation of C.G.S. §§ 42-110a, et seq.

213.   Plaintiff KXT has suffered an ascertainable loss of money and property as a result of Defendant Dista's acts or practices in this district prohibited by C.G.S. 42-110a, et seq.

### TWENTIETH COUNT
#### Patent Infringement of U.S. Patent No. 8,137,551
#### (as to Zuma Water Filters LLC d/b/a Zuma Filters)

214.   Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-51 inclusive.

215.   Plaintiff KXT is informed and believes that Defendant Zuma has infringed Claim 49 of the '551 Patent under 35 U.S.C. § 271(b) by actively inducing infringement of the method for attaching a filter housing assembly to a filter base identified by the method disclosed and claimed, through sales of replacement filters by Zuma Filters for the Frigidaire PureSource ULTRAWF filter cartridge, Model Nos. OPFE1-RF300 and OPFE1B-RF300.  Exhibit A.

216.   Plaintiff KXT is informed and believes that offers for sale and sales of said filters have been widely and repeatedly made in the United States by and on behalf of Defendant Zuma through interactive websites on the Internet and through other means.

217.   Plaintiff KXT is informed and believes that Defendant Zuma knew of the '551 Patent, and knew that their activities would induce infringement of the method claim for attaching a filter housing assembly, as identified by the '551 Patent.

218.   Plaintiff KXT is informed and believes that the infringement and inducement of infringement of the '551 Patent by Defendant Zuma by making, using, offering for sale and selling said filters, and by continuing to do so has been repeated and willful with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

219.   As a direct and proximate result of Defendant Zuma's acts of patent infringement and inducement of infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

220.   Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant Zuma is preliminarily and permanently enjoined from their unlawful and willful infringement of the '551 Patent, Plaintiff KXT will suffer irreparable harm.


### TWENTY-FIRST COUNT
### Patent Infringement of U.S. Patent No. 8,137,551
### (as to U.S. Water Filters, Inc. d/b/a Tier1 and Water Filters Direct LLC d/b/a Tier1)

221.   Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42, 52-62, 166-175 and 196-201 inclusive.

222.   Plaintiff KXT is informed and believes that Defendant Tier1 has infringed Claim 49 of the '551 Patent under 35 U.S.C. § 271(b) by actively inducing infringement of the method for attaching a

filter housing assembly to a filter base identified by the method disclosed and claimed, through sales of a replacement filter by Tier1 for the Frigidaire PureSource ULTRAWF filter cartridge, Model No. RWF1180. Exhibit B.

223.   Plaintiff KXT is informed and believes that offers for sale and sales of said filter have been widely and repeatedly made in the United States by and on behalf of Defendant Tier1 through interactive websites on the Internet and through other means.

224.   Plaintiff KXT is informed and believes that Defendant Tier1 knew of the '551 Patent, and knew that their activities would induce infringement of the method claim for attaching a filter housing assembly, as identified by the '551 Patent.

225.   Plaintiff KXT is informed and believes that the infringement and inducement of infringement of the '551 Patent by Defendant Tier1 by making, using, offering for sale and selling said infringing device, and by continuing to do so has been repeated and willful with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

226.   As a direct and proximate result of Defendant Tier1's acts of patent infringement and inducement of infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

227.   Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant Tier1 is preliminarily and permanently enjoined from their unlawful and willful infringement of the '551 Patent, Plaintiff KXT will suffer irreparable harm.

### TWENTY-SECOND COUNT
### Patent Infringement of U.S. Patent No. 8,137,551
### (as to Clearwater Filters d/b/a Mist by Clearwater)

228.   Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42, and 63-71 inclusive.

229.   Plaintiff KXT is informed and believes that Defendant Mist has infringed Claim 49 of the '551 Patent under 35 U.S.C. § 271(b) by actively inducing infringement of the method for attaching a filter housing assembly to a filter base identified by the method disclosed and claimed, through sales of a replacement filter by Clearwater Filters d/b/a Mist by Clearwater for the Frigidaire PureSource ULTRAWF filter cartridge, Model No. CWMF011. Exhibit D.

230.   Plaintiff KXT is informed and believes that offers for sale and sales of said filter have been widely and repeatedly made in the United States by and on behalf of Defendant Mist through interactive websites on the Internet and through other means.

231.   Plaintiff KXT is informed and believes that Defendant Mist knew of the '551 Patent, and knew that their activities would induce infringement of the method claim for attaching a filter housing assembly, as identified by the '551 Patent.

232.   Plaintiff KXT is informed and believes that the infringement and inducement of infringement of the '551 Patent by Defendant Mist by making, using, offering for sale and selling said filter, and by continuing to do so has been repeated and willful with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

233.   As a direct and proximate result of Defendant Mist's acts of patent infringement and inducement of infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

234.   Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant Mist is preliminarily and permanently enjoined from their unlawful and willful infringement of the '551 Patent, Plaintiff KXT will suffer irreparable harm.

**TWENTY-THIRD COUNT**
**Patent Infringement of U.S. Patent No. 8,137,551**
**(as to Waterfall Filer Company d/b/a Waterfall Filter)**

235.   Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42, 72-80, 126-135, 176-185, and 202-207 inclusive.

236.   Plaintiff KXT is informed and believes that Defendant Waterfall has infringed Claim 49 of the '551 Patent under 35 U.S.C. § 271(b) by actively inducing infringement of the method for attaching a filter housing assembly to a filter base identified by the method disclosed and claimed, through sales of a replacement filter by Waterfall Filter for the Frigidaire PureSource ULTRAWF filter cartridge, Model No. WFC4401. Exhibit E.

237.   Plaintiff KXT is informed and believes that offers for sale and sales of said filter have been widely and repeatedly made in the United States by and on behalf of Defendant Waterfall through interactive websites on the Internet and through other means.

238.   Plaintiff KXT is informed and believes that Defendant Waterfall knew of the '551 Patent, and knew that their activities would induce infringement of the method claim for attaching a filter housing assembly, as identified by the '551 Patent.

239.   Plaintiff KXT is informed and believes that the infringement and inducement of infringement of the '551 Patent by Defendant Waterfall by making, using, offering for sale and selling said filter, and by continuing to do so has been repeated and willful with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

240.   As a direct and proximate result of Defendant Waterfall's acts of patent infringement and inducement of infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

241.   Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant Waterfall is preliminarily and permanently enjoined from their unlawful and willful infringement of the '551 Patent, Plaintiff KXT will suffer irreparable harm.

### TWENTY-FOURTH COUNT
#### Patent Infringement of U.S. Patent No. 8,137,551
#### (as to Bluesky d/b/a IcePure)

242.   Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42, 81-89, and 136-145 inclusive.

243.   Plaintiff KXT is informed and believes that Defendant IcePure has infringed Claim 49 of the '551 Patent under 35 U.S.C. § 271(b) by actively inducing infringement of the method for attaching a filter housing assembly to a filter base identified by the method disclosed and claimed, through sales of a replacement filter by IcePure for the Frigidaire PureSource ULTRAWF filter cartridge, Model No. RFC2200A.  Exhibit F.

244.   Plaintiff KXT is informed and believes that offers for sale and sales of said filter have been widely and repeatedly made in the United States by and on behalf of Defendant IcePure through interactive websites on the Internet and through other means.

245.   Plaintiff KXT is informed and believes that Defendant IcePure knew of the '551 Patent, and knew that their activities would induce infringement of the method claim for attaching a filter housing assembly, as identified by the '551 Patent.

246. Plaintiff KXT is informed and believes that the infringement and inducement of infringement of the '551 Patent by Defendant IcePure by making, using, offering for sale and selling said filter, and by continuing to do so has been repeated and willful with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

247.   As a direct and proximate result of Defendant IcePure's acts of patent infringement and inducement of infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

248.   Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant IcePure is preliminarily and permanently enjoined from their unlawful and willful infringement of the '551 Patent, Plaintiff KXT will suffer irreparable harm.

### TWENTY-FIFTH COUNT
### Patent Infringement of U.S. Patent No. 8,137,551
### (as to Best Filters d/b/a Best)

249.   Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42  and 90-98 inclusive.

250.   Plaintiff KXT is informed and believes that Defendant Best has infringed Claim 49 of the '551 Patent under 35 U.S.C. § 271(b) by actively inducing infringement of the method for attaching a filter housing assembly to a filter base identified by the method disclosed and claimed, through sales of a replacement filter by Best for the Frigidaire PureSource ULTRAWF filter cartridge, Model No. ULTRA WF.  Exhibit G.

251.   Plaintiff KXT is informed and believes that offers for sale and sales of said filter have been widely and repeatedly made in the United States by and on behalf of Defendant Best through interactive websites on the Internet and through other means.

252.   Plaintiff KXT is informed and believes that Defendant Best knew of the '551 Patent, and knew that their activities would induce infringement of the method claim for attaching a filter housing assembly, as identified by the '551 Patent.

253. Plaintiff KXT is informed and believes that the infringement and inducement of infringement of the '551 Patent by Defendant Best by making, using, offering for sale and selling said

filter, and by continuing to do so has been repeated and willful with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

254.   As a direct and proximate result of Defendant Best's acts of patent infringement and inducement of infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

255.   Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant Best is preliminarily and permanently enjoined from their unlawful and willful infringement of the '551 Patent, Plaintiff KXT will suffer irreparable harm.

### TWENTY-SIXTH COUNT
#### Patent Infringement of U.S. Patent No. 8,137,551
#### (as to Shireen Canton d/b/a Alpine Water)

256.   Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42 and 99-107 inclusive.

257.   Plaintiff KXT is informed and believes that Defendant Alpine has infringed Claim 49 of the '551 Patent under 35 U.S.C. § 271(b) by actively inducing infringement of the method for attaching a filter housing assembly to a filter base identified by the method disclosed and claimed, through sales of a replacement filter by Alpine Water for the Frigidaire PureSource ULTRAWF filter cartridge.  Exhibit H.

258.   Plaintiff KXT is informed and believes that offers for sale and sales of said filter have been widely and repeatedly made in the United States by and on behalf of Defendant Alpine through interactive websites on the Internet and through other means.

259.   Plaintiff KXT is informed and believes that Defendant Alpine knew of the '551 Patent, and knew that their activities would induce infringement of the method claim for attaching a filter housing assembly, as identified by the '551 Patent.

260.   Plaintiff KXT is informed and believes that the infringement and inducement of infringement of the '551 Patent by Defendant Alpine by making, using, offering for sale and selling said filter, and by continuing to do so has been repeated and willful with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

261.   As a direct and proximate result of Defendant Alpine's acts of patent infringement and inducement of infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

262.   Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant Alpine is preliminarily and permanently enjoined from their unlawful and willful infringement of the '551 Patent, Plaintiff KXT will suffer irreparable harm.

### TWENTY-SEVENTH COUNT
#### Patent Infringement of U.S. Patent No. 8,137,551
#### (as to Dista Filter d/b/a Dista)

263.   Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42, 108-116, 146-155, 186-195, and 208-213 inclusive.

264.   Plaintiff KXT is informed and believes that Defendant Dista has infringed Claim 49 of the '551 Patent under 35 U.S.C. § 271(b) by actively inducing infringement of the method for attaching a filter housing assembly to a filter base identified by the method disclosed and claimed, through sales of a replacement filter by Dista for the Frigidaire PureSource ULTRAWF filter cartridge, Model No. DWF-22.  Exhibit I.

265.   Plaintiff KXT is informed and believes that offers for sale and sales of said filter have been widely and repeatedly made in the United States by and on behalf of Defendant Dista through interactive websites on the Internet and through other means.

266.   Plaintiff KXT is informed and believes that Defendant Dista knew of the '551 Patent, and knew that their activities would induce infringement of the method claim for attaching a filter housing assembly, as identified by the '551 Patent.

267.   Plaintiff KXT is informed and believes that the infringement and inducement of infringement of the '551 Patent by Defendant Dista by making, using, offering for sale and selling said filter, and by continuing to do so has been repeated and willful with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

268.   As a direct and proximate result of Defendant Dista's acts of patent infringement and inducement of infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

269.   Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant Dista is preliminarily and permanently enjoined from their unlawful and willful infringement of the '551 Patent, Plaintiff KXT will suffer irreparable harm.

## TWENTY-EIGHTH COUNT
### Patent Infringement of U.S. Patent No. 8,137,551
### (as to Brixton Holdings LLC d/b/a Eternawater)

270.   Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42, 117-125, and 156-165 inclusive.

271.   Plaintiff KXT is informed and believes that Defendant Eternawater has infringed Claim 49 of the '551 Patent under 35 U.S.C. § 271(b) by actively inducing infringement of the method for attaching a filter housing assembly to a filter base identified by the method disclosed and claimed, through sales of a replacement filter by Eternawater for the Frigidaire PureSource ULTRAWF filter cartridge, Model No. EWRF1022.  Exhibit J.

272.  Plaintiff KXT is informed and believes that offers for sale and sales of said filter have been widely and repeatedly made in the United States by and on behalf of Defendant Eternawater through interactive websites on the Internet and through other means.

273.  Plaintiff KXT is informed and believes that Defendant Eternawater knew of the '551 Patent, and knew that their activities would induce infringement of the method claim for attaching a filter housing assembly, as identified by the '551 Patent.

274.  Plaintiff KXT is informed and believes that the infringement and inducement of infringement of the '551 Patent by Defendant Eternawater by making, using, offering for sale and selling said filter, and by continuing to do so has been repeated and willful with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

275.  As a direct and proximate result of Defendant Eternawater's acts of patent infringement and inducement of infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

276.  Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant Eternawater is preliminarily and permanently enjoined from their unlawful and willful infringement of the '551 Patent, Plaintiff KXT will suffer irreparable harm.

### TWENTY-NINTH COUNT
### Patent Infringement of U.S. Patent No. 9,446,336
### (as to U.S. Water Filters, Inc. d/b/a Tier1 and Water Filters Direct LLC d/b/a Tier1)

277.  Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42, 52-62, 166-175, 196-201, and 221-227 inclusive.

278.  Plaintiff KXT is informed and believes that Defendants Tier1 have infringed at least Claims 1, 3 and 4 of the '336 Patent under 35 U.S.C. § 271(a) by making, using, distributing, offering for sale, and/or selling in this district and elsewhere in the United States a cassette filter identified by

the invention disclosed and claimed in the '336 Patent. Such infringing device includes the replacement filter by Tier1 for the Frigidaire PureSource WF2CB filter cartridge, Model No. RWF1031 ("Replacement Cassette Filter"). Exhibit B.

279. Defendants Tier1's Replacement Cassette Filter embodies all of the limitations and features of Claims 1, 3 and 4 of the '336 Patent as shown in the attached Exhibit B photos, including:

a)  at least two filter cartridge housing assemblies 60a,b, each filter cartridge housing assembly having a top end 62 with at least one fluid port 63, a bottom end 64, and a lower housing portion 66; and

b)  a top cover connector plate 68 attaching said at least two filter cartridge housing assemblies at said top end;

c)  a bottom cover connector plate 70 having an outer circumferential edge 71, and covering each axial end of said lower housing portions;

d)  a housing guide 80 attaching each filter cartridge housing assembly, said housing guide attached to or integral with said bottom cover connector plate 70, and circumferentially encompassing an arcuate section of each of said filter cartridge housing assemblies, wherein said outer circumferential edge of the bottom cover connector plate extends beyond said housing guide; and

e)  a stabilizer 90 in mechanical contact with said at least two filter cartridge housing assemblies, said stabilizer presenting sidewalls for attachment with each of said at least two filter cartridge housing assemblies, and presenting opposing free sides without locking members, said opposing free sides having a distance therebetween, such that the distance between said opposing free sides is no greater than either diameter of said at least two filter cartridge housing assemblies;

f)  the housing guide and housing assembly lower housing portions forming a tongue and groove attachment;

g)  the bottom end of each filter cartridge housing assembly including an end cap forming a groove for receiving a projecting lip extending from the housing guide.

280. Plaintiff KXT is informed and believes that offers for sale and sales of said infringing device have been widely and repeatedly made in the United States by and on behalf of Defendants Tier1 through interactive websites on the Internet and through other means.

281. Plaintiff KXT has placed Defendants Tier1 on notice of the '336 Patent and of the infringement.

282.   Plaintiff KXT is informed and believes that Defendants Tier1 knew of the '336 Patent, and knew that their activities would lead to infringement of the receiver for a cassette filter housing, as identified by the '336 Patent.

283.   Plaintiff KXT is informed and believes that the infringement of the '336 Patent by Defendants Tier1 by making, using, offering for sale and selling said infringing device, and by continuing to do so after having been placed on notice of the '336 Patent, has been repeated and willful with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

284.   As a direct and proximate result of Defendants Tier1's acts of patent infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

285.   Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendants Tier1 are preliminarily and permanently enjoined from their unlawful and willful infringement of the '336 Patent, Plaintiff KXT will suffer irreparable harm.

### THIRTIETH COUNT
### Patent Infringement of U.S. Patent No. 9,446,336
### (as to Waterfall Filter Company d/b/a Waterfall Filter)

286. Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42, 72-80, 126-135, 176-185, 202-207, and 235-241 inclusive.

287.   Plaintiff KXT is informed and believes that Defendant Waterfall has infringed at least Claims 1, 3 and 4 of the '336 Patent under 35 U.S.C. § 271(a) by making, using, distributing, offering for sale, and/or selling in this district and elsewhere in the United States a cassette filter identified by the invention disclosed and claimed in the '336 Patent. Such infringing device includes the

replacement filter by Waterfall Filter for the Frigidaire PureSource WF2CB filter cartridge, Model No. WFC6601 ("Replacement Cassette Filter"). Exhibit E.

288.   Upon information and belief, Defendant Waterfall's Replacement Cassette Filter embodies all of the limitations and features of Claims 1, 3 and 4 of the '336 Patent, including:

a)   at least two filter cartridge housing assemblies each filter cartridge housing assembly having a top end with at least one fluid port, a bottom end, and a lower housing portion; and

b)   a top cover connector plate attaching said at least two filter cartridge housing assemblies at said top end;

c)   a bottom cover connector plate having an outer circumferential edge, and covering each axial end of said lower housing portions;

d)   a housing guide attaching each filter cartridge housing assembly, said housing guide attached to or integral with said bottom cover connector plate, and circumferentially encompassing an arcuate section of each of said filter cartridge housing assemblies, wherein said outer circumferential edge of the bottom cover connector plate extends beyond said housing guide; and

e)   a stabilizer in mechanical contact with said at least two filter cartridge housing assemblies, said stabilizer presenting sidewalls for attachment with each of said at least two filter cartridge housing assemblies, and presenting opposing free sides without locking members, said opposing free sides having a distance therebetween, such that the distance between said opposing free sides is no greater than either diameter of said at least two filter cartridge housing assemblies;

f)   the housing guide and housing assembly lower housing portions forming a tongue and groove attachment;

g)   the bottom end of each filter cartridge housing assembly including an end cap forming a groove for receiving a projecting lip extending from the housing guide.

289.   Plaintiff KXT is informed and believes that offers for sale and sales of said infringing device have been widely and repeatedly made in the United States by and on behalf of Defendant Waterfall through interactive websites on the Internet and through other means.

290.   Plaintiff KXT has placed Defendant Waterfall on notice of the '336 Patent and of the infringement.

291.   Plaintiff KXT is informed and believes that Defendant Waterfall knew of the '336 Patent, and knew that their activities would lead to infringement of the receiver for a cassette filter housing, as identified by the '336 Patent.

292.   Plaintiff KXT is informed and believes that the infringement of the '336 Patent by Defendant Waterfall by making, using, offering for sale and selling said infringing device, and by continuing to do so after having been placed on notice of the '336 Patent, has been repeated and willful with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

293.   As a direct and proximate result of Defendant Waterfall's acts of patent infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

294.   Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant Waterfall is preliminarily and permanently enjoined from their unlawful and willful infringement of the '336 Patent, Plaintiff KXT will suffer irreparable harm.

### THIRTY-FIRST COUNT
#### Patent Infringement of U.S. Patent No. 9,446,336
#### (as to Bluesky d/b/a IcePure)

295.   Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42, 81-89, 136-145, and 242-248 inclusive.

296.   Plaintiff KXT is informed and believes that Defendant IcePure has infringed at least Claims 1, 3 and 4 of the '336 Patent under 35 U.S.C. § 271(a) by making, using, distributing, offering for sale, and/or selling in this district and elsewhere in the United States a cassette filter identified by the invention disclosed and claimed in the '336 Patent. Such infringing device includes the

replacement filter by IcePure for the Frigidaire PureSource WF2CB filter cartridge, Model No. RWF3300A ("Replacement Cassette Filter"). Exhibit F.

297.   Upon information and belief, Defendant IcePure's Replacement Cassette Filter embodies all of the limitations and features of Claims 1, 3 and 4 of the '336 Patent, including:

a)    at least two filter cartridge housing assemblies each filter cartridge housing assembly having a top end with at least one fluid port, a bottom end, and a lower housing portion; and

b)    a top cover connector plate attaching said at least two filter cartridge housing assemblies at said top end;

c)    a bottom cover connector plate having an outer circumferential edge, and covering each axial end of said lower housing portions;

d)    a housing guide attaching each filter cartridge housing assembly, said housing guide attached to or integral with said bottom cover connector plate, and circumferentially encompassing an arcuate section of each of said filter cartridge housing assemblies, wherein said outer circumferential edge of the bottom cover connector plate extends beyond said housing guide; and

e)    a stabilizer in mechanical contact with said at least two filter cartridge housing assemblies, said stabilizer presenting sidewalls for attachment with each of said at least two filter cartridge housing assemblies, and presenting opposing free sides without locking members, said opposing free sides having a distance therebetween, such that the distance between said opposing free sides is no greater than either diameter of said at least two filter cartridge housing assemblies;

f)    the housing guide and housing assembly lower housing portions forming a tongue and groove attachment;

g)    the bottom end of each filter cartridge housing assembly including an end cap forming a groove for receiving a projecting lip extending from the housing guide.

298.   Plaintiff KXT is informed and believes that offers for sale and sales of said infringing device have been widely and repeatedly made in the United States by and on behalf of Defendant IcePure through interactive websites on the Internet and through other means.

299.   Plaintiff KXT has placed Defendant IcePure on notice of the '336 Patent and of the infringement.

300.   Plaintiff KXT is informed and believes that Defendant IcePure knew of the '336 Patent, and knew that their activities would lead to infringement of the receiver for a cassette filter housing, as identified by the '336 Patent.

301.   Plaintiff KXT is informed and believes that the infringement of the '336 Patent by Defendant IcePure by making, using, offering for sale and selling said infringing device, and by continuing to do so after having been placed on notice of the '336 Patent, has been repeated and willful with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

302.   As a direct and proximate result of Defendant IcePure's acts of patent infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

303.   Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant IcePure is preliminarily and permanently enjoined from their unlawful and willful infringement of the '336 Patent, Plaintiff KXT will suffer irreparable harm.

### *THIRTY-SECOND COUNT*
### *Patent Infringement of U.S. Patent No. 9,446,336*
### *(as to Dista Filter d/b/a Dista)*

304.   Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42, 108-116, 146-155, 186-195, 208-213, and 263-269 inclusive.

305.   Plaintiff KXT is informed and believes that Defendants Dista has infringed at least Claims 1, 3 and 4 of the '336 Patent under 35 U.S.C. § 271(a) by making, using, distributing, offering for sale, and/or selling in this district and elsewhere in the United States a cassette filter identified by the invention disclosed and claimed in the '336 Patent. Such infringing device includes the replacement

filter by Dista Filter for the Frigidaire PureSource WF2CB filter cartridge, Model No. DWF-33 ("Replacement Cassette Filter"). Exhibit I.

306. Upon information and belief, Defendant Dista's Replacement Cassette Filter embodies all of the limitations and features of Claims 1, 3 and 4 of the '336 Patent, including:

a)      at least two filter cartridge housing assemblies, each filter cartridge housing assembly having a top end with at least one fluid port, a bottom end, and a lower housing portion; and

b)      a top cover connector plate attaching said at least two filter cartridge housing assemblies at said top end;

c)      a bottom cover connector plate having an outer circumferential edge, and covering each axial end of said lower housing portions;

d)      a housing guide attaching each filter cartridge housing assembly, said housing guide attached to or integral with said bottom cover connector plate, and circumferentially encompassing an arcuate section of each of said filter cartridge housing assemblies, wherein said outer circumferential edge of the bottom cover connector plate extends beyond said housing guide; and

e)      a stabilizer in mechanical contact with said at least two filter cartridge housing assemblies, said stabilizer presenting sidewalls for attachment with each of said at least two filter cartridge housing assemblies, and presenting opposing free sides without locking members, said opposing free sides having a distance therebetween, such that the distance between said opposing free sides is no greater than either diameter of said at least two filter cartridge housing assemblies;

f)      the housing guide and housing assembly lower housing portions forming a tongue and groove attachment;

g)      the bottom end of each filter cartridge housing assembly including an end cap forming a groove for receiving a projecting lip extending from the housing guide.

307. Plaintiff KXT is informed and believes that offers for sale and sales of said infringing device have been widely and repeatedly made in the United States by and on behalf of Defendant Dista through interactive websites on the Internet and through other means.

308. Plaintiff KXT has placed Defendant Dista on notice of the '336 Patent and of the infringement.

309. Plaintiff KXT is informed and believes that Defendant Dista knew of the '336 Patent, and knew that their activities would lead to infringement of the receiver for a cassette filter housing, as identified by the '336 Patent.

310. Plaintiff KXT is informed and believes that the infringement of the '336 Patent by Defendant Dista by making, using, offering for sale and selling said infringing device, and by continuing to do so after having been placed on notice of the '336 Patent, has been repeated and willful with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

311. As a direct and proximate result of Defendant Dista's acts of patent infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

312. Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant Dista is preliminarily and permanently enjoined from their unlawful and willful infringement of the '336 Patent, Plaintiff KXT will suffer irreparable harm.

### THIRTY-THIRD COUNT
#### Patent Infringement of U.S. Patent No. 9,446,336
#### (as to Brixton Holdings LLC d/b/a Eternawater)

313. Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42, 117-125, 156-165, and 270-276 inclusive.

314. Plaintiff KXT is informed and believes that Defendant Eternawater has infringed at least Claims 1, 3, and 4 of the '336 Patent under 35 U.S.C. § 271(a) by making, using, distributing, offering for sale, and/or selling in this district and elsewhere in the United States a cassette filter identified by the invention disclosed and claimed in the '336 Patent. Such infringing device includes

the replacement filter by Eternawater for the Frigidaire PureSource WF2CB filter cartridge, Model No. EWRF1016 ("Replacement Cassette Filter"). Exhibit J.

315. Defendant Eternawater's Replacement Cassette Filter embodies all of the limitations and features of Claims 1, 3 and 4 of the '336 Patent as shown in the attached Exhibit J photos, including:

a)      at least two filter cartridge housing assemblies 60a,b, each filter cartridge housing assembly having a top end 62 with at least one fluid port 63, a bottom end 64, and a lower housing portion 66; and

b)      a top cover connector plate 68 attaching said at least two filter cartridge housing assemblies at said top end;

c)      a bottom cover connector plate 70 having an outer circumferential edge 71, and covering each axial end of said lower housing portions;

d)      a housing guide 80 attaching each filter cartridge housing assembly, said housing guide attached to or integral with said bottom cover connector plate 70, and circumferentially encompassing an arcuate section of each of said filter cartridge housing assemblies, wherein said outer circumferential edge of the bottom cover connector plate extends beyond said housing guide; and

e)      a stabilizer 90 in mechanical contact with said at least two filter cartridge housing assemblies, said stabilizer presenting sidewalls for attachment with each of said at least two filter cartridge housing assemblies, and presenting opposing free sides without locking members, said opposing free sides having a distance therebetween, such that the distance between said opposing free sides is no greater than either diameter of said at least two filter cartridge housing assemblies;

f)      the housing guide and housing assembly lower housing portions forming a tongue and groove attachment;

g)      the bottom end of each filter cartridge housing assembly including an end cap forming a groove for receiving a projecting lip extending from the housing guide.

316. Plaintiff KXT is informed and believes that offers for sale and sales of said infringing device have been widely and repeatedly made in the United States by and on behalf of Defendant Eternawater through interactive websites on the Internet and through other means.

317. Plaintiff KXT has placed Defendant Eternawater on notice of the '336 Patent and of the infringement.

318. Plaintiff KXT is informed and believes that Defendant Eternawater knew of the '336 Patent, and knew that their activities would lead to infringement of the receiver for a cassette filter housing, as identified by the '336 Patent.

319. Plaintiff KXT is informed and believes that the infringement of the '336 Patent by Defendant Eternawater by making, using, offering for sale and selling said infringing device, and by continuing to do so after having been placed on notice of the '336 Patent, has been repeated and willful with conscious disregard for the rights of Plaintiff KXT, and will continue unless enjoined by this Court.

320. As a direct and proximate result of Defendant Eternawater's acts of patent infringement, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain substantial damages in an amount not presently known.

321. Plaintiff KXT has no adequate remedy of law against these acts of patent infringement. Unless Defendant Eternawater is preliminarily and permanently enjoined from their unlawful and willful infringement of the '336 Patent, Plaintiff KXT will suffer irreparable harm.

### THIRTY-FOURTH COUNT
### UNFAIR COMPETITION IN VIOLATION OF THE LANHAM ACT
### (15 U.S.C. §§ 1125, Et Seq.)
### (as to Bluesky d/b/a IcePure)

322. Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42, 81-89, 136-145, 242-248, and 295-303 inclusive.

323. This is an action for unfair competition in the conduct of the Defendant IcePure's trade in violation of the Lanham Act, Section 43 (15 U.S.C. § 1125(a)).

324. Plaintiff KXT is informed and believes that Defendant IcePure has sold, advertised, promoted and continues to sell, advertise, and promote competing goods and services offered by

KXT in this district and in the same channels of interstate commerce as Plaintiff, which falsely bear the certified mark of the Water Quality Association ("WQA"). Exhibit F.

325. The WQA is a not-for-profit association for the residential, commercial, and industrial water treatment industry.

326. The WQA certifies products for the water treatment industry. As stated on the WQA website (www.wqa.org/product-cert):

*Certified Products Have a "Leg Up" in the Marketplace*

Finding quality products in a marketplace flooded with options can be challenging. How can you tell if a product is safe, reliable, durable and capable of meeting the claims made on its packaging and literature?

WQA's Certified Product Listings are available to help connect consumers with water treatment products that have been tested and certified to industry standards.

*WQA's Gold Seal Product Certification Program ensures that the product is constructed or formulated from safe materials, the claims listed on the packaging are backed by test data, and the product will hold up under normal usage conditions.*

WQA maintains a complete listing of all products and components that have earned the Gold Seal and Sustainability Marks. *Only products that pass the rigorous testing requirements of industry standards, pass annual manufacturing facility audits, and comply with WQA's Certification Schemes can be found in this listing.*

www.wqa.org/product-cert (emphasis added); Exhibit P.

327. Some of the benefits of a WQA certification include, inter alia: a) certified products bearing a distinguished WQA Mark indicate that the product has undergone evaluation and testing to verify that the product will perform as the certified claims indicate, which provides consumers a very simple way to recognize products that will perform the way the packaging indicates it will; b) WQA certified products allow for consumers to target the specific contaminant issues with confidence that the product does what it claims it will do; c) WQA certified products are demonstrated to pass some states or local city specific regulations (e.g., California has passed new legislation that will require an ANSI accredited certifier to issue certification to products making health claims before they can be

legally sold in California.  Products certified by WQA are demonstrated to be safe for purchase in California.). Exhibit P.

328. Section 43 of the Lanham Act states in pertinent part:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, *false or misleading description of fact, or false or misleading representation of fact, which—*

(A) *is likely to* cause confusion, or to cause mistake, or to *deceive as to the* affiliation, connection, or association of such person with another person, or as to the origin, *sponsorship, or approval of his or her goods,* services, or commercial activities by another person, *or*

(B) *in commercial advertising or promotion, misrepresents the nature, characteristics, qualities*, or geographic origin *of his or her or another person's goods,* services, or commercial activities,
*shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.*

15 U.S.C. § 1125 (emphasis added).

329. On information and belief, Defendant IcePure's use of the WQA mark in this district is likely to deceive purchasers and potential customers as to the sponsorship or approval of Defendant IcePure 's goods, and misrepresents the nature, characteristic, and quality of its goods.

330. As a direct and proximate result of Defendant IcePure's acts of unfair competition, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain damages in an amount not presently known.

331. Defendant IcePure 's unfair competition will continue unless enjoined by this Court.


### THIRTY-FIFTH COUNT
### UNFAIR COMPETITION IN VIOLATION OF THE LANHAM ACT
### (15 U.S.C. §§ 1125, Et Seq.)
### (as to Shireen Canton d/b/a Alpine Water)

332. Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42, 99-107, and 256-262 inclusive.

333. This is an action for unfair competition in the conduct of the Defendant Alpine's trade in violation of the Lanham Act, Section 43 (15 U.S.C. § 1125(a)).

334. Plaintiff KXT is informed and believes that Defendant Alpine has sold, advertised, promoted and continues to sell, advertise, and promote competing goods and services offered by KXT in this district and in the same channels of interstate commerce as Plaintiff, which falsely bear the certified mark of the Water Quality Association ("WQA"). Exhibit H.

335. The WQA is a not-for-profit association for the residential, commercial, and industrial water treatment industry.

336. The WQA certifies products for the water treatment industry. As stated on the WQA website (www.wqa.org/product-cert):

> *Certified Products Have a "Leg Up" in the Marketplace*
>
> Finding quality products in a marketplace flooded with options can be challenging. How can you tell if a product is safe, reliable, durable and capable of meeting the claims made on its packaging and literature?
>
> WQA's Certified Product Listings are available to help connect consumers with water treatment products that have been tested and certified to industry standards.
>
> *WQA's Gold Seal Product Certification Program ensures that the product is constructed or formulated from safe materials, the claims listed on the packaging are backed by test data, and the product will hold up under normal usage conditions.*
>
> WQA maintains a complete listing of all products and components that have earned the Gold Seal and Sustainability Marks. *Only products that pass the rigorous testing requirements of industry standards, pass annual manufacturing facility audits, and comply with WQA's Certification Schemes can be found in this listing.*

www.wqa.org/product-cert (emphasis added); Exhibit P.

337. Some of the benefits of a WQA certification include, *inter alia*: a) certified products bearing a distinguished WQA Mark indicate that the product has undergone evaluation and testing to verify that the product will perform as the certified claims indicate, which provides consumers a very simple way to recognize products that will perform the way the packaging indicates it will; b) WQA certified products allow for consumers to target the specific contaminant issues with confidence that

the product does what it claims it will do; c) WQA certified products are demonstrated to pass some states or local city specific regulations (e.g., California has passed new legislation that will require an ANSI accredited certifier to issue certification to products making health claims before they can be legally sold in California.  Products certified by WQA are demonstrated to be safe for purchase in California.). Exhibit P.

338.   Section 43 of the Lanham Act states in pertinent part:

(1)     Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, *false or misleading description of fact, or false or misleading representation of fact, which—*

(A)     *is likely to* cause confusion, or to cause mistake, or to *deceive as to the* affiliation, connection, or association of such person with another person, or as to the origin, *sponsorship, or approval of his or her goods,* services, or commercial activities by another person, *or*

(B)     *in commercial advertising or promotion, misrepresents the nature, characteristics, qualities*, or geographic origin *of his or her or another person's goods,* services, or commercial activities, *shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.*

15 U.S.C. § 1125 (emphasis added).

339.   On information and belief, Defendant Alpine's use of the WQA mark in this district is likely to deceive purchasers and potential customers as to the sponsorship or approval of Defendant Alpine 's goods, and misrepresents the nature, characteristic, and quality of its goods.

340.   As a direct and proximate result of Defendant Alpine's acts of unfair competition, Plaintiff KXT has been and continues to be injured, and has sustained and will continue to sustain damages in an amount not presently known.

341.   Defendant Alpine 's unfair competition will continue unless enjoined by this Court.

### THIRTY-SIXTH COUNT
### VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT UNDER
### CONNECTICUT GENERAL STATUTES §§ 42-110a, ET SEQ.
### (as to Bluesky d/b/a IcePure)

342.   Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42, 81-89, 136-145, 242-248, 295-303, and 322-331 inclusive.

343.   This is an action for unfair methods of competition, and unfair and deceptive acts and practices in the conduct of the Defendant IcePure's trade in violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), pursuant to C.G.S. §§ 42-110a, et seq.

344.   This Court has pendent jurisdiction under 28 U.S.C. § 1367(a). Venue is proper under 28 U.S.C. § 1391.

345.   By committing the acts herein alleged, Defendant IcePure has engaged in unfair methods of competition and unfair and deceptive acts and practice in the conduct of trade within the State of Connecticut in violation of C.G.S. §§ 42-110a, et seq., causing confusion to consumers in the trade, damage and loss profits to Plaintiff.

346. Defendant IcePure knew or should have known that the aforementioned acts are in violation of C.G.S. §§ 42-110a, et seq.

347. Plaintiff KXT has suffered an ascertainable loss of money and property as a result of Defendant IcePure's acts or practices in this district prohibited by C.G.S. 42-110a, et seq.

### THIRTY-SEVENTH COUNT
### VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT UNDER
### CONNECTICUT GENERAL STATUTES §§ 42-110a, ET SEQ.
### (as to Shireen Canton d/b/a Alpine Water)

348. Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1-42, 99-107, 256-262, and 332-341 inclusive.

349. This is an action for unfair methods of competition, and unfair and deceptive acts and practices in the conduct of the Defendant Alpine's trade in violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), pursuant to C.G.S. §§ 42-110a, et seq.

350.   This Court has pendent jurisdiction under 28 U.S.C. § 1367(a). Venue is proper under 28 U.S.C. § 1391.

351.   By committing the acts herein alleged, Defendant Alpine has engaged in unfair methods of competition and unfair and deceptive acts and practice in the conduct of trade within the State of Connecticut in violation of C.G.S. §§ 42-110a, et seq., causing confusion to consumers in the trade, damage and loss profits to Plaintiff.

352.   Defendant Alpine knew or should have known that the aforementioned acts are in violation of C.G.S. §§ 42-110a, et seq.

353.   Plaintiff, KXT, has suffered an ascertainable loss of money and property as a result of Defendant, Alpine's, acts or practices in this district prohibited by C.G.S. 42-110a, et seq.

## VI.        PRAYER FOR RELIEF

WHEREFORE, Plaintiff, KX Technologies LLC, prays for relief as follows:

1. That each respective Defendant, its respective officers, agents, servants, employees and attorneys, and all other persons, firms, or corporations acting in concert or participation with it, be enjoined and restrained, during the pendency of this action and permanently thereafter, from making, using, offering for sale or selling any and all goods which infringe the aforementioned United States patents;

2. That Plaintiff KXT recover its damages sustained as a result of each respective Defendant's infringement pursuant to 35 U.S.C. § 284;

3. That each respective Defendant's infringement be independently adjudged to be willful and this case declared exceptional, and that Plaintiff's damages be trebled, pursuant to 35 U.S.C. § 284;

4. That Plaintiff recover its reasonable costs, expenses, and attorney fees, pursuant to 35 U.S.C. § 285;

5. That each Defendant, its respective officers, agents, servants, employees, and attorneys, and all other persons, firms, or corporations acting in concert or participation with it, be ordered to vacate or otherwise destroy infringing products, advertisements, catalogs, brochures, and alter all internet sites that promote the infringing goods to remove any and all reference to the infringing products, including implementing the remedies pursuant to 15 U.S.C. § 1118;

6. That each respective Defendant account for (a) all gains, profits, and advantages derived by said trade practices and unfair competition, and (b) all gains, profits, and advantages derived by each Defendant's respective infringement of Plaintiffs intellectual property; and

7. That Plaintiff granted such other and further relief as the Court deems just and proper.

## VII.    DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, KX Technologies LLC, hereby demands a jury trial on all issues raised by the claims herein and triable of right by a jury.

Respectfully submitted,

**KX TECHNOLOGIES LLC**

Date:___December 16, 2016_____          By:____/s/ Robert Curcio_____
                                                Robert Curcio
                                                Fed. Bar No. CT18791

Date:___December 16, 2016_____          By:____/s/ David R. Pegnataro_____
                                                David R. Pegnataro
                                                Fed. Bar No. CT28854

**DeLIO, PETERSON & CURCIO, LLC**
700 State Street, Suite 402
New Haven, CT 06511
Tel: 203-787-0595
Fax: 203-787-5818
Email: efilings@delpet.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2016, a copy of the foregoing **AMENDED COMPLAINT** was filed electronically and served by First Class U.S. Mail upon anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by First Class U.S. Mail upon anyone unable to accept electronic filing on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

**KX TECHNOLOGIES LLC**

By:____/s/ David R. Pegnataro_____
        Robert Curcio (CT18791)
        David R. Pegnataro (CT28854)

**DeLIO, PETERSON & CURCIO, LLC**
700 State Street, Suite 402
New Haven, CT 06511
Tel: 203-787-0595
Fax: 203-787-5818
Email: efilings@delpet.com

*Attorneys for Plaintiff*

KXIN908_Amended_Complaint.doc